671 So.2d 867 (1996)
Allen McARTHUR, Appellant,
v.
STATE of Florida, Appellee.
No. 94-2866.
District Court of Appeal of Florida, Fourth District.
April 17, 1996.
*868 Jeffrey H. Garland of Kirschner & Garland, P.A., Fort Pierce, for appellant.
Robert A. Butterworth, Attorney General, Tallahassee, and Don M. Rogers, Assistant Attorney General, West Palm Beach, for appellee.
STEVENSON, Judge.
Appellant, Allen McArthur, was tried by jury and convicted of sexual battery, aggravated battery, and false imprisonment. We reverse the sexual battery conviction because of the state's mid-trial disclosure of physical evidence which materially undermined, and procedurally prejudiced, the appellant's trial strategy.
The events and testimony at trial may be briefly summarized. Appellant and the victim, Carrie McKee, had an on-and-off romantic relationship for close to one year. On the night in question, McKee testified that after she and appellant spent a night of bowling and heavy drinking, she went to appellant's home where he later refused to let her leave, physically beat her, and then forced himself upon her sexually. Appellant's defense at trial was consent. During opening statement, defense counsel told the jury that the evidence would show there was no struggle between appellant and McKee. Armed with a lab report from the state which indicated that none of the victim's clothes were torn, defense counsel pointed out to the jury that although McKee told the police that appellant tore off her clothes, the physical evidence would show that none of her clothes were torn.
On the second day of trial, the prosecutor told defense counsel that a pair of shorts, torn at the zipper and allegedly worn by the victim on the night in question, would be offered into evidence. The prosecutor informed the defense that the victim was prepared to testify that when the police gathered the physical evidence, they took appellant's shorts instead of her shorts. Appellant's shorts were then improperly labeled as if they were the victim's. McKee would testify that her shorts had never been handed over to the authorities.
Because the police had the wrong pair of shorts, the lab reports supplied by the state during discovery indicated that the victim's clothing was not torn or stretched. Appellant does not contest the state's assertions that it was unaware that the wrong pair of shorts had been tested, and that the problem was brought to defense counsel's attention as soon as the state became aware of it.
When the state attempted to have the shorts produced by McKee introduced into evidence, appellant requested that the trial court conduct a Richardson hearing[1] and made a motion for a mistrial. In response, the trial court inquired into the surrounding circumstances of the alleged discovery violation. Thereafter, the court determined that a discovery violation did not occur because "there was actual knowledge by the Defense of the existence of the piece of evidence." Alternatively, the trial court determined that even if there was a "technical violation," it was inadvertent, trivial, and did not have a prejudicial affect on appellant's ability to prepare for trial. The trial court allowed the *869 shorts into evidence, and denied appellant's motion for mistrial.
We disagree with the trial court's conclusion that because appellant knew of the existence of the shorts, there was no discovery violation by the state. Although appellant knew the shorts "existed," he had no reason to know that he had been misguided by the state, and that the police did not have the proper shorts in custody. Both the state and the defense knew that the shorts existed, but they were all under the belief that the police had the proper shorts in their custody and had tested them. During argument on this issue at trial, the prosecutor remarked: "[E]ven law enforcement themselves were under the impression that they had her shorts ... [A]s far as we were concerned, we had her shorts in evidence." In view of the fact that the state affirmatively led appellant to believe that it had the victim's shorts in its custody and that the shorts were not torn, we cannot conclude that no discovery violation occurred simply because appellant knew that the evidence "existed."
Nevertheless, we must still determine if the state breached any of its obligations imposed by the applicable discovery rules under the circumstances of this case. Florida Rule of Criminal Procedure 3.220 imposes an affirmative and continuing duty on the state to disclose to the defense certain information within the state's possession, including the results of scientific tests and any tangible evidence that the state intends to introduce at trial.[2]Raffone v. State, 483 So.2d 761, 764 (Fla. 4th DCA), cause dismissed, 491 So.2d 281 (Fla.1986), although not directly on point, is helpful to our analysis as to whether a discovery violation occurred in the instant case. In Raffone, the defendants were tried on various drug related charges. Pursuant to a demand for discovery, the state supplied a crime lab analysis of various items that had been seized from the defendants' joint residence. The report listed seventeen items and indicated that three of those items tested positive for the presence of illegal drugs. 483 So.2d at 762. On the first day of trial, the state provided a supplemental analysis which indicated that a fourth item among the seventeen seized from the residence had been tested and revealed the presence of 52 grams of cocaine. Although the initial tests had been performed eleven months prior to trial, the supplemental analysis was conducted the day before the trial began. Id.
During the second day of trial, the state called the crime lab chemist and began to question him about the newly-tested evidence. Defense counsel objected and moved for a mistrial. In so doing, defense counsel claimed that the defense had relied on the report as written, and that now, in the midst of trial, the state was attempting to present new evidence of drug trafficking. Defense counsel explained how the new evidence impacted on the defense strategy which had been planned after receipt of the first report. Id. The trial court, without holding a Richardson inquiry, determined that the defendant had not been prejudiced and ordered the trial to proceed. Id. at 763.
On appeal, this court held that the facts demonstrated a discovery violation and that the trial court erred in failing to conduct a Richardson inquiry. In finding that a discovery violation occurred, Judge Hurley, writing for the majority, stated:
[T]he facts demonstrate a clear discovery violation. The state lulled the defense into believing that it would prove one thing and then, at trial, it set out to prove another. The initial lab report which was the only such report issued prior to trial, indicated that all of the listed items had been tested and that only three had produced positive results.
* * * * * *
[A]lthough it is true that the seized drugs were available for testing by the defendants, there was no reason for them to do so. The initial report did not suggest incomplete testing, and more to the point, we believe that the defense is entitled to rely on the accuracy of such reports.
* * * * * *

*870 Since it is clear that the state disclosed one set of results in the lab report and then attempted to prove something else at trial, we hold that the trial court was required to conduct a Richardson inquiry.
Id. at 763-65 (footnote omitted).
We believe that Raffone stands for the prudent principle that furnishing misleading and inaccurate discovery is tantamount to providing no discovery at all and may constitute a violation of the discovery rules. In the instant case, as in Raffone, the state provided discovery to appellant, but that discovery was incomplete and misleading. As the court held in Raffone, a defendant is entitled to rely on the accuracy of the information disclosed by the prosecution pursuant to a discovery request under rule 3.200.
Although we agree with the trial court that the violation was unintentional, we cannot agree that it was trivial or harmless. Our supreme court offered appellate courts the following guidance in determining whether an unsanctioned discovery violation constitutes harmless error:
In determining whether a Richardson violation is harmless, the appellate court must consider whether there is a reasonable possibility that the discovery violation procedurally prejudiced the defense. As used in this context, the defense is procedurally prejudiced if there is a reasonable possibility that the defendant's trial preparation or strategy would have been materially different had the violation not occurred. Trial preparation or strategy should be considered materially different if it could have reasonably benefited the defendant. In making this determination, every conceivable course of action must be considered. If the reviewing court finds that there is a reasonable possibility that the discovery violation prejudiced the defense or if the record is insufficient to determine that the defense was not materially affected, the error must be considered harmful. In other words, only if the appellate court can say beyond a reasonable doubt that the defense was not procedurally prejudiced by the discovery violation can the error be considered harmless.
State v. Schopp, 653 So.2d 1016, 1020-21 (Fla.1995).
In the instant case, appellant had already made his opening statement and had built his entire defense around the victim's alleged consent and his belief that the shorts which were going to be presented at trial were not torn in any way. He constructed this opening statement based upon the erroneous lab report which had been provided to him by the prosecution. Appellant had every right to rely upon the accuracy of the declaration in the report that the victim's shorts had been tested. The failure of defense counsel to live up to his assurance that McKee's clothing had not been torn could have dealt a fatal blow to the credibility of the consent defense in the eyes of the jury. The eleventh hour presentation of the victim's actual shorts in the midst of trial was so pregnant with the potential for prejudice to the defense that we cannot say beyond a reasonable doubt that the defense was not procedurally prejudiced by the discovery violation in this case.
Accordingly, we find that the trial court abused its discretion in failing to either exclude the evidence or in the alternative, grant appellant's motion for a mistrial.[3] We reverse appellant's conviction and sentence for sexual battery and remand for a new trial on that charge. We have examined the issues raised by appellant in relation to the aggravated battery and false imprisonment charges but find no error.
Affirmed in part, reversed in part and remanded.
POLEN and SHAHOOD, JJ., concur.
NOTES
[1] Richardson v. State, 246 So.2d 771 (Fla.1971).
[2] The state is charged with constructive possession of all information and evidence in the hands of its agents, including police officers. See Gorham v. State, 597 So.2d 782 (Fla. 1992).
[3] We note that where a mistrial is declared upon the defendant's motion or with his consent, jeopardy does not attach and the defendant may be retried. Oregon v. Kennedy, 456 U.S. 667, 102 S.Ct. 2083, 72 L.Ed.2d 416 (1982); Rutherford v. State, 545 So.2d 853 (Fla.), cert. denied, 493 U.S. 945, 110 S.Ct. 353, 107 L.Ed.2d 341 (1989). Such is the situation here, where there is no showing of intentional prosecutorial misconduct.