887 A.2d 1120

**Kevin Leon HUBBARD**

v.

**STATE of Maryland.**

**Gary Eugene Earl, Jr.**

v.

**State of Maryland.**

Nos. 258, Sept. Term, 2004, 446, Sept. Term, 2004.

Court of Special Appeals of Maryland.

Dec. 8, 2005.

252

Allen E. Burns (Nancy S. Forster, Public Defender, on brief), for appellant.

Shannon E. Avery (J. Joseph Curran, Jr., Atty. Gen., on brief), for appellee.

Panel MURPHY, C.J., JAMES S. GETTY, (Ret'd, specially assigned), LAWRENCE F. RODOWSKY, (Ret'd, specially assigned), JJ.

MURPHY, C.J.

In this appeal from the Circuit Court for Cecil County, appellants Gary Eugene Earl, Jr. (Earl) and Kevin Leon

Hubbard (Hubbard) present us with the question of "[w]heth-er appellants' constitutional protections against double jeopardy would be violated by a retrial because the [circuit court] was unjustified in finding a manifest necessity for declaring a mistrial[?]" For the reasons that follow, we answer "no" to this question and remand for further proceedings in the circuit court.

## Relevant Procedural History

Appellants and a man named Edward Wallace Benson, III, were charged with attempted second degree murder and related offenses, including use of a handgun in the commission of a crime of violence. On November 3, 2003, the charges against both appellants were called for a "joint" trial,[1] each appellant elected a jury trial, and a jury was selected and sworn. On November 4, 2003, the circuit court granted the State's motion for a mistrial, finding a "manifest necessity" to do so. This ruling was based upon the following sequence of events.

The State's witnesses included Sabrina Rogers (Rogers), who had made pretrial (photographic) identifications of appellants and Benson, positively identifying them as the persons who committed the crimes at issue. Prior to trial, the circuit court (1) suppressed Rogers' extrajudicial identification of Earl on the ground that the identification procedure was "impermissively suggestive," and (2) prohibited the State from asking Rogers to make an in-court identification of Earl, on the ground that the State failed to establish that Rogers in-court identification "had a source independent of the illegal pre-trial ... viewing." *See Smith v. State*, 6 Md.App. 59, 68, 250 A.2d 285 (1969). The record shows that the following transpired on November 4, 2003:

> THE COURT: Okay. Are we ready to bring the jury in?
> [PROSECUTOR]: One other matter, Your Honor, that it appears to me to be a bit problematic. That is the court has excluded Ms. Rodger's [sic] identification of Gary Earl.

---

1. The charges against Benson were not called for trial on that date.

THE COURT: Out-of-court and in-court.

[PROSECUTOR]: ... It is my assumption that defense counsel [for Hubbard] will, in cross-examination of Sabrina Rodgers [sic], bring to the attention of the jury that there were numerous identifications made by Ms. Rodgers [sic] of persons other than his client.

While that's fine for [Hubbard's counsel], the situation is that I would want to try to rehabilitate, if we get to that point of those questions being asked, rehabilitate Ms. Rodgers [sic] by showing that, in fact, she had identified another person who is a defendant in this case, that being Mr. Earl. And, of course, that's obviously very prejudicial toward Mr. Earl. And I'm bringing it to the court's attention now because, again, obviously, in a joint trial, evidence can be used or heard as against one defendant while it may not be admissible against another defendant.

[EARL'S COUNSEL]: Your Honor, that would require some sort of curative instruction from you and I don't know how you do that and get that through these people's minds.

[PROSECUTOR]: And I agree.

[EARL'S COUNSEL]: That's fundamentally unfair to Mr. Earl.

THE COURT: Yeah, I agree, I don't know how that can be done and cured. And while it's certainly true that if Mr. Earl in his defense or in his cross-examination of Ms. Rodgers [sic] opens that door, then he opens that door, but I'm not going to permit the [S]tate to open the door or the defendant Hubbard to open that door. I'm going to order nobody ask her any questions about identifying Gary Earl, because to do otherwise completely undoes the suppression ruling.

\*     \*     \*

THE COURT: ... Now, the alternative, let me say, because we have not yet heard a witness, although we did swear the jury, might be to sever these trials, but I'm not sure whether we get that or not.

[HUBBARD'S COUNSEL]: I think, Your Honor, that's the only, that's the only alterative, because for the court to tell Mr. Hubbard that he can't bring to the jury's attention that identifications were made and seven rather than six were made by this witness, which is, in fact, the truth, and that is an exculpatory piece of evidence to my client, to prevent me from being able to bring that to the jury's attention is denying my client's right of confrontation.

THE COURT: Is there a practical significance between six and seven?

[HUBBARD'S COUNSEL]: Sure.

THE COURT: I mean you can specifically identify the named individuals in all but Gary Earl. Can you do it without naming the other defendant as the person she identified?

[HUBBARD'S COUNSEL]: Oh, sure. I could say to the witness isn't it, in fact, true and list every name except Earl and then just refer to the identification as Earl and that you also named another person that is not Kevin Hubbard. Now, there may be an implication there that could be Mr. Earl, but I can do it that way and not use Mr. Earl's name.

Whether or not the court thinks that is, in fact, violating Mr. Earl's rights because of the granting of the suppression, if I were Mr. Earl I would say, yeah, that does. And I think the only cure for this, the only way to protect Mr. Earl's rights and Mr. Hubbard's rights is to sever these cases, because the prosecution is asking that if I ask questions which I think I'd be entitled to ask, that it intends to try to bring out this basically what would be a violation of what the court's suppression order is, I think that—I think it's irreconcilable, Your Honor. Frankly, Your Honor, I think the court, as far as my client is concerned, would be unjustified telling me that I can't bring to the jury's attention that all seven identifications were made of three people at the time in some form. By the same token, I think it can

be reasonably argued that if I do that, there could be implication that Mr. Earl was identified.

*   *   *

[EARL'S COUNSEL]: Your Honor, I've already said I don't want it to come in. I don't want it to be any part of this case. I don't think you can cure that with an instruction to the jury.

After some additional discussion, the circuit court asked for each party's "position in regard to a mistrial," at which point (1) the prosecutor stated, "at this point I think that a mistrial is the appropriate undertaking," (2) Earl's counsel stated that, "[Earl] would prefer that the court not grant a mistrial," and (3) Hubbard's counsel stated, "[w]e're not asking for a mistrial either, Your Honor. . . . That is not to say that I don't know what alternative the court has at this juncture."

Ultimately, the circuit court announced the following ruling:

[T]his jury has now had opening statements having to do with two defendants, has been told various things about the evidence from the [S]tate, [which] intends to proceed against two defendants. Severing one of them and continuing with the other one at this point seems like a very confusing way for the jury.

*   *   *

[I]f I have one paramount duty that's more important than any others, it is to safeguard the rights of parties before the court, defendants and the [S]tate, actually.

. . . I agree that it's difficult to see how I can fashion a remedy, but upon further reflection, it seems to me that any remedy that I fashion has got to be prejudicial to somebody, prejudicial to one of the defendants or the other or maybe both of them, and/or prejudicial to the [S]tate for that matter. . . .

Upon further consideration of [the prosecutor's] argument, I believe that this is a manifest necessity and I will, therefore, declare a mistrial in this matter and grant severance on my own motion of all three of these cases.

Thereafter, each appellant moved for dismissal of all the charges as to which "jeopardy" had attached. The circuit court denied those motions, and these appeals followed.

## Standard of Review

In the case at bar, the same circuit court judge (1) declared the mistrial, and (2) denied appellants' motions for dismissal on the ground of double jeopardy. Although there is no requirement that such a motion be presented to the trial judge who declared the mistrial, the standard for determining whether there was a "manifest necessity" to do so is the same for (1) the trial judge who declared the mistrial, (2) a trial judge other than the one who declared the mistrial, and (3) the appellate court. This standard is the same whether the mistrial was declared during a court trial or during a jury trial, although "an event which would necessitate a mistrial where the trial is before a jury, might not require a mistrial in a non-jury trial." *Cornish v. State,* 272 Md. 312, 322, 322 A.2d 880 (1974). The defendant who has moved to dismiss the charges must prove that the declaration of a mistrial constituted an "abuse of discretion."

Unlike the *de novo* standard of review applied to warrantless searches, consent searches, and confessions, the "abuse of discretion" standard is analogous to the standard applied by the suppression hearing court when reviewing the sufficiency of an affidavit presented in support of a search warrant signed by another judge.[2] To be sure, the trial judge's discretion is not altogether unbridled. In *United States v. Perez,* 9 Wheat. 579, 6 L.Ed. 165 (1824), the United States Supreme Court stated:

[T]he law has invested Courts of justice with the authority to discharge a jury from giving any verdict, whenever, in their opinion, taking all the circumstances into consider-

---

2. *See Ramia v. State,* 57 Md.App. 654, 660, 471 A.2d 1064 (1984) for the standard that the suppression hearing court applies to the issue of whether an affidavit is sufficient to establish probable cause for the issuance of a search warrant.

ation, there is a manifest necessity for the act, or the ends of public justice would otherwise be defeated. They are to exercise a sound discretion on the subject; and it is impossible to define all the circumstances, which would render it proper to interfere. To be sure, the power ought to be used with the greatest caution, under urgent circumstances, and for very plain and obvious causes....

*Id.* at 580.

In *McCorkle v. State,* 95 Md.App. 31, 619 A.2d 186 (1993), this Court quoted with approval the following summarization found in *Illinois v. Somerville,* 410 U.S. 458, 93 S.Ct. 1066, 35 L.Ed.2d 425 (1973):

> *A trial judge properly exercises his discretion to declare a mistrial if an impartial verdict cannot be reached, or if a verdict of conviction could be reached but would have to be reversed on appeal due to an obvious procedural error in the trial.*

410 U.S. at 464, 93 S.Ct. 1066 (emphasis in *McCorkle,* 95 Md.App. at 44–45, 619 A.2d 186). The *Somerville* Court also stated that "[t]he broad discretion reserved to the trial judge in such circumstances has been consistently reiterated in decision of this Court." 410 U.S. at 462, 93 S.Ct. 1066.

█ In their treatise on MARYLAND CRIMINAL LAW: PRACTICE AND PROCEDURE,[3] Chief Judge Gilbert and Judge Moylan provide the following analysis:

> When the mistrial has been declared by the judge *sua sponte* or has been granted by the judge at the request of the State without the acquiescence of the defendant, the manifest necessity requirement applies. The hung jury, inflammatory publicity contaminating the jury in either direction, prolonged sickness of judge or counsel, the movements of an army in time of war—all of these have been held to constitute manifest necessity. The animating principle clearly is that since we are protecting the right of a

---

3.  Richard P. Gilbert & Charles E. Moylan, Jr., *Maryland Criminal Law: Practice and Procedure* (1983).

defendant to have the tribunal held together until a verdict is reached, all alternatives less drastic than the declaration of a mistrial should at least be considered before the more drastic step is taken. Consideration at least should be given to such alternatives as a jury of less than twelve, if one of the jurors is suddenly unavailable and no alternate juror is present; postponement, in case of sickness of brief duration; curative instructions, in case of improper comment or improper introduction of evidence. The Supreme Court has dealt with this problem on a number of occasions and has, generally speaking, been liberal in finding that there was manifest necessity for the declaration of a mistrial.

Gilbert & Moylan, § 37.7, at 447 (footnote, citing seven Supreme Court cases, omitted). We shall therefore apply the "abuse of discretion" standard as we review the issue of whether there was a "manifest necessity" for a mistrial.

In *Gray v. State,* 388 Md. 366, 879 A.2d 1064 (2005), the Court of Appeals stated:

We will only reverse a trial court's discretionary act if we find that the court has abused its discretion. As noted by this Court in *Dehn v. Edgecombe,* 384 Md. 606, 865 A.2d 603 (2005):

" 'Abuse of discretion' is one of those very general, amorphous terms that appellate courts use and apply with great frequency but which they have defined in many different ways.... [A] ruling reviewed under an abuse of discretion standard will not be reversed simply because the appellate court would not have made the same ruling. The decision under consideration has to be well removed from any center mark imagined by the reviewing court and beyond the fringe of what that court deems minimally acceptable. That kind of distance can arise in a number of ways, among which are that the ruling either does not logically follow from the findings upon which it supposedly rests or has no reasonable relationship to its announced objective. That, we think, is included within the notion of 'untenable grounds,' 'violative of fact and logic,' and

'against the logic and effect of facts and inferences before the court.' " *Dehn v. Edgecombe,* 384 Md. at 628, 865 A.2d at 616 quoting *North v. North,* 102 Md.App. 1, 13–14, 648 A.2d 1025, 1031–1032 (1994).

*Id.* at 383–84, 879 A.2d 1064.

In *Hart v. Miller,* 65 Md.App. 620, 501 A.2d 872 (1985), this Court stated:

Discretion signifies choice. Consideration of the various elements of the problem does not preordain a single permissible conclusion. . . . Failure to exercise choice in a situation calling for choice is an abuse of discretion, because it assumes the existence of a rule that admits of but one answer.

*Id.* at 627, 501 A.2d 872 (citations omitted). In *Metheny v. State,* 359 Md. 576, 755 A.2d 1088 (2000), the Court of Appeals stated: "There is an abuse of discretion *'where no reasonable person would take the view adopted by the [trial] court'*. . . . *In re Adoption/Guardianship No. 3598,* 347 Md. 295, 312, 701 A.2d 110, 118 (1997) (citations omitted)(emphasis added)." *Id.* at 604, 755 A.2d 1088.

■ When applying the "abuse of discretion" standard of review, this Court is required to affirm a discretionary ruling of the circuit court even though each appellate judge on the argument panel would have ruled differently if he or she had been serving as the trial judge in the case being reviewed. For example, in *Thodos v. Bland,* 75 Md.App. 700, 542 A.2d 1307 (1988), although each member of the panel "would have unhesitatingly granted" the appellant's motion for a new trial, the panel nonetheless affirmed the judgment that followed the denial of that motion. This Court was required to do so because the panel was "unable to rationalize a basis for finding that the trial judge abused his discretion." *Id.* at 717, 542 A.2d 1307.

### Analysis

■ If any of the judges on this panel were serving as the trial judge in the case at bar, he would not have granted a

mistrial. One member of the panel is persuaded that, because the State had no right to "rehabilitate" Rogers by establishing that she had made an impermissively suggestive extrajudicial identification of Earl, the circuit court should simply have prevented the prosecutor from inquiring about this identification during Rogers' redirect examination (unless, of course, Earl's counsel had "opened the door" to such testimony). One member of the panel is persuaded that the circuit court should have "severed" the cases rather than declare a mistrial as to both appellants. Under the "abuse of discretion" standard of review, however, it is of no consequence that a member of this panel would have taken a different approach to the problem presented in the case at bar. To paraphrase what this Court stated in *Ramia v. State*, 57 Md.App. 654, 658, 471 A.2d 1064 (1984):

> A close question of ["manifest necessity"] might be submitted to twenty fair and knowledgeable judges with ten finding one way and ten finding the opposite way and none of them being unreasonable or clearly erroneous.

In the words of the circuit court, it was faced with a "Hobson's choice." The record shows that the circuit court expressly considered (1) the issue of whether a manifest necessity existed under the circumstances, (2) the various potential alternatives to the declaration of a mistrial, (3) each defendant's interest in having "the tribunal held together," and (4) each defendant's potential exposure to unfair prejudice resulting from whatever relief would be granted to the other defendant. Under these circumstances, it simply was not "well removed from any center mark" to conclude that there was a manifest necessity for a mistrial because (1) Hubbard's right of confrontation was on a collision course with Earl's right to the exclusion of evidence that he had been identified by Rogers as one of the perpetrators, and (2) in light of what they had been told in opening statements, the jurors might well be unable to focus upon the case against the remaining defendant without being somehow affected by learning that they would not be called upon to decide the charges against the defendant whose case was severed. For these reasons, we

are persuaded that neither appellant is entitled to a dismissal on the ground of double jeopardy.

**DENIALS OF MOTIONS TO DISMISS AFFIRMED; CASES REMANDED FOR FURTHER PROCEEDINGS NOT INCONSISTENT WITH THIS OPINION; EACH APPELLANT TO PAY 50% OF THE COSTS.**