909 A.2d 270

**Kevin Leon HUBBARD and Gary Eugene Earl, Jr.**

**v.**

**STATE of Maryland.**

**No. 7, Sept. Term, 2006.**

Court of Appeals of Maryland.

Oct. 17, 2006.

74

Michael R. Malloy, Asst. Public Defender (Nancy S. Forster, Public Defender, on brief), for petitioners.

Shannon E. Avery, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., on brief), for respondent.

Argued before BELL, C.J., RAKER, WILNER, CATHELL, HARRELL, BATTAGLIA and GREENE, JJ.

BATTAGLIA, J.

Petitioners, Kevin Leon Hubbard and Gary Eugene Earl, Jr., seek review of a judgment of the Court of Special Appeals affirming the trial court's granting of a mistrial based on manifest necessity. The trial judge had declared a mistrial over Petitioners's objections because a witness, whose identification testimony against one defendant had been suppressed, was to be called by the State to testify against the co-defendant in a joint trial. We shall hold that the judge erred by declaring that a mistrial was manifestly necessary.

## I. Introduction

Petitioners were indicted on December 11, 2002, in a twenty-count indictment in which they were charged, individually and collectively, with one count of attempted second-degree murder in violation of Section 2–204 of the Criminal Law Article, Maryland Code (2002); two counts of first-degree assault in violation of Section 3–202 of the Criminal Law Article, Maryland Code (2002); two counts of second-degree assault in violation of Section 3–203 of the Criminal Law Article, Maryland Code (2002); two counts of robbery with a dangerous weapon in violation of Section 3–403 of the Criminal Law Article, Maryland Code (2002); one count of first-degree burglary in violation of Section 6–202 of the Criminal Law Article, Maryland Code (2002); one count of third-degree burglary in violation of Section 6–204 of the Criminal Law Article, Maryland Code (2002); one count of theft over five hundred dollars in violation of Section 7–104 of the Criminal Law Article, Maryland Code (2002); one count of theft under five hundred dollars in violation of Section 7–104 of the Criminal Law Article, Maryland Code (2002); two counts of robbery in violation of Section 3–402 of the Criminal Law

Article, Maryland Code (2002); one count of use of a handgun in the commission of a crime in violation of Section 4-204 of the Criminal Law Article, Maryland Code (2002); and counts for conspiracy to commit first-degree assault, armed robbery, burglary, theft over five hundred dollars, robbery, as well as conspiracy to use a handgun in the commission of a crime. Edward Wallace Benson, III also was charged in connection with the same crime.[1]

Subsequently, Petitioners filed separate motions to suppress photograph identifications made by various witnesses who had identified either or both of them. The Circuit Court for Cecil County held a pre-trial suppression hearing, which lasted several days, concerning both out-of-court and prospective in-court identifications by four witnesses—the two victims, Damon Twyman and Daniel Draper, and two other eyewitnesses, Alisabel Ortega and Sabrina Rogers. Most significant for this appeal, Ms. Rogers photographically identified seven different individuals at different times before trial as being tied to or involved in the incident, including the three co-defendants, although the crime purportedly involved only three individuals.

At the suppression hearing, Ms. Rogers's out-of-court and in-court identifications of Earl were ruled to be inadmissible because the photographic identification of Earl was obtained through impermissibly suggestive procedures and was not independently reliable enough to permit an in-court identification. The trial judge noted that Ms. Rogers was shown six photograph arrays in which she identified six different individuals. Ms. Rogers was then shown a seventh array, which was the same as photo array number three, but modified so that Earl's picture was substituted. During this display, the detective told Ms. Rogers they were still looking for the third individual involved. The trial court found that Ms. Rogers's

---

1. Benson is not a party to this appeal. Prior to jury selection and impaneling, his case was severed from the other case. Subsequently, Benson went to trial and was found guilty of armed robbery and related charges. Benson appealed to the Court of Special Appeals, which affirmed the convictions in an unreported opinion.

out-of-court identification was impermissibly suggestive because of the detective's comment and because Ms. Rogers had effectively ruled out every other person in the seventh photographic array prior to the substitution of Earl's picture. The judge also found that Ms. Rogers's identification of Earl was not independently reliable enough to allow an in-court identification because Ms. Rogers had previously identified an individual who was not involved in the crime as the third suspect, who she also thereafter identified as Earl. Following the court's ruling, the State asked for clarification:

[STATE]: The Court indicated that it was suppressing the identification of Sabrina Rogers as to both in-court and— I'm sorry, both out-of-court and in—court. I have to say the State did not feel that there was evidence presented to rise to the level of taint; therefore, the State did not try to elicit any information from her as to reliability. And while the suppression hearing is concluded and I understand and accept the Court's ruling with respect to the out-of-court identification, the concern that I have is that I believe that the State may be able to establish reliability as to the in-court identification.

[COURT]: Well, I think, you know, that I don't want to have more process than is due rather than less process than is due most of the time, but I think your argument was and I think it's correct that the burden in the first instance is on the defense to show constitutional or show impermissible suggestion; but the burden clearly, by all the case law that everybody has cited and I've looked at in this case indicates that if, in fact, they make it on that issue, then the burden shifts to the State by clear and convincing evidence; and in my opinion they did make it on that. I understand that in your opinion they did not. And you might be righter that I, but nevertheless it did shift and Sabrina Rogers was here and was, in fact, examined. And it's my finding that the evidence did not meet your burden by clear and convincing evidence at this point. Basically the suppression hearing is over.

\* \* \*

[STATE]: And to the extent that the exclusion of an out-of-court identification does not ipso facto exclude an in-court identification.

[COURT]: If it's got a separate basis.

[STATE]: I want to let everyone know that if that's the case, I would certainly be trying to bring it forward at the time of trial. And, again, I understand the Court's ruling today and that's what we—

[COURT]: Well, at this point I don't even know if I'll be the trial judge. So whoever the trial judge is, I suppose if you want to raise that issue I'll have to deal with it, but my ruling is that [the in-court identification is] suppressed.

The judge denied the motion to suppress Ms. Rogers's identification of Hubbard and denied both Petitioners's motions to suppress the identifications from Mr. Draper, Mr. Twyman, and Ms. Ortega.[2] The State persisted in its joint prosecution of Hubbard and Earl. The jury was selected and sworn before the same judge that conducted the suppression hearing. After opening statements from the State and both Petitioners's counsels, the State requested the opportunity to establish a separate and independent basis for an in-court identification of Earl by putting Ms. Rogers on the witness stand. The trial judge granted the request, and after the jury was excused for the day, the State called Ms. Rogers to testify, but the trial court ruled that there was no separate and independent basis for an in-court identification and granted Earl's motion to suppress.

The following morning, before the jury was brought into the courtroom, the State indicated that it was going to call Ms. Rogers as a witness and raised a possible conundrum. The prosecutor was concerned that when Ms. Rogers testified against Hubbard, Hubbard's attorney would cross-examine

---

**2.** On the day of trial, the same judge reconsidered the suppression rulings and also suppressed Ms. Ortega's out-of-court identification of Hubbard, but allowed the State to put Ms. Ortega on the witness stand to attempt to establish a separate and independent basis for an in-court identification.

Ms. Rogers based on her numerous identifications of individuals other than Hubbard, which was concededly appropriate; the prosecutor insisted that she should have the ability to rehabilitate Ms. Rogers by showing that she had identified Earl, an identification which had been suppressed by the trial court. When Earl's attorney objected that such inquiry would be fundamentally unfair to Earl, the trial judge agreed, and stated that a curative instruction would not be helpful, and ordered that no party ask Ms. Rogers any questions about identifying Earl.[3]

The Court, sua sponte, then raised the specter of a severance:

[COURT]: I think in this joint trial, it's incumbent upon me not to let the State or the other defendant undo the suppression ruling in regard to Gary Earl. Now, the alterna-

---

**3.** [STATE]: One other matter, Your Honor, that it appears to me to be a bit problematic. That is the court has excluded Ms. Rogers's identification of Gary Earl.

[COURT]: Out-of-court and in-court.

[STATE]: Both in-court and out-of-court. It is my assumption that [Hubbard's Attorney] will, in cross-examination of Sabrina Rogers, bring to the attention of the jury that there were numerous identifications made by Ms. Rogers of persons other than his client. While that's fine for [Hubbard's Attorney], the situation is that I would want to try to rehabilitate, if we get to that point of those questions being asked, rehabilitate Ms. Rogers by showing that, in fact, she had identified another person who is a defendant in this case, that being Mr. Earl. And, of course, that's obviously very prejudicial toward Mr. Earl. And I'm bringing it to the court's attention now because, again, obviously in a joint trial, evidence can be used or heard as against one defendant while it may not be admissible against another defendant.

[EARL'S ATTORNEY]: Your Honor, that would require some sort of curative instruction from you and I don't know how you do that and get that through these people's minds.

[STATE]: And I agree.

[EARL'S ATTORNEY]: That's fundamentally unfair to Mr. Earl.

[COURT]: Yeah, I agree, I don't know how that can be done and cured. And while it's certainly true that if Mr. Earl in his defense or in his cross-examination of Ms. Rogers opens that door, then he opens that door, but I'm not going to permit the State to open the door or the defendant Hubbard to open that door. I'm going to order nobody ask her any questions about identifying Gary Earl, because to do otherwise completely undoes the suppression ruling.

tive, let me say, because we have not yet heard a witness, although we did swear the jury, might be to sever these trials, but I'm not sure whether we get that or not.

[HUBBARD'S ATTORNEY]: I think, Your Honor, that's the only, that's the only alternative, because for the court to tell Mr. Hubbard that he can't bring to the jury's attention that identifications were made and seven rather than six were made by this witness, which is, in fact, the truth, and that is an exculpatory piece of evidence to my client, to prevent me from being able to bring that to the jury's attention is denying my client's right of confrontation.

Immediately thereafter, the trial court questioned Hubbard's attorney regarding whether he could effectively cross-examine Ms. Rogers without specifically naming Earl. Hubbard's attorney argued that it was possible—he could list every person identified by Ms. Rogers but refer to Earl's identification as "another person that is not Hubbard"—however, along with Earl's attorney, he questioned whether that limitation would contravene the decision to suppress the identification because the jury could imply that the un-named identification was that of Earl.[4]

The issue of declaring a mistrial was then raised:

---

4. [COURT]: Is there a practical significance between six and seven.
[HUBBARD'S ATTORNEY]: Sure.
[COURT]: I mean you can specifically identify the named individuals in all but Gary Earl. Can you do it without naming the other defendant as the person she identified?
[HUBBARD'S ATTORNEY]: Oh, sure. I could say to the witness isn't it, in fact, true, and list every name except Earl and then just refer to the identification as Earl and that you also named another person that is not Kevin Hubbard. Now, there may be an implication there that could be Mr. Earl, but I can do it that way and not use Mr. Earl's name.
Whether or not the court thinks that is, in fact, violating Mr. Earl's rights because of the granting of the suppression, if I were Mr. Earl I would say, yeah, that does. And I think the only cure for this, the only way to protect Mr. Earl's rights and Mr. Hubbard's rights is to sever these cases, because the prosecution is asking that if I ask questions which I think I'd be entitled to ask, that it intends to try to bring out this basically what would be a violation of what the court's suppression order is, I think that—I think it's irreconcilable, Your

[COURT]: All right, [The Prosecutor], what's your belief or position in regard to severance, jeopardy and mistrial?

[STATE]: Your Honor, I would have to—I think that it's occasion for a mistrial. I have raised I believe on the record but I certainly had raised it with all three defense counsel at the time of the first hearing you all really planning to be heard together, these cases are going to be heard together, because we have these identifications that are essentially inextricably intertwined, I believe. You

Honor. Frankly, Your Honor, I think the court, as far as my client is concerned, would be unjustified telling me that I can't bring to the jury's attention that all seven identifications were made of three people at the time in some form. By the same token, I think it can be reasonably argued that if I do that, there could be an implication that Mr. Earl was identified.

\* \* \*

[EARL'S ATTORNEY]: Your Honor, I've already said I don't want [Ms. Rogers's identification of Earl] to come in. I don't want it to be any part of the case. I don't think that you can cure that with an instruction to the jury.

[COURT]: I'm not even going to try to cure it with an instruction to the jury. Either we're going to do it in such a way that Mr. Earl is not named and is adequately protected in terms of the suppression or we're not going to do it. I'm not going to allow Gary Earl to be named as a person she identified and then try to tell the jury to disregard that. You know, that would be senseless.

What is your position in regard to whether or not the examination and cross-examination can be done naming six people identified and a seventh unidentified—I mean unnamed, and whether or not that prejudices Mr. Earl?

[EARL'S ATTORNEY]: We've had this conversation a number of times. We can control what happens in here, we don't know what happens back there. And my concern is that by implication or inference or supposition or however it is they arrive at a decision, the jury could conclude that was, in fact, a reference to Gary. So I would have to—I'd have to be opposed to it, although I certainly do understand [Hubbard's Attorney]'s argument that prejudices him. I mean as a defense attorney I would agree with that.

[COURT]: [The Prosecutor], what's your position?

[STATE]: I'm looking for a—I'm looking for a level playing field. I brought the matter to the court's attention because I suspected that, you know, that may be where we would be heading. And rather than break at that point and have the jury going back to the jury room, I thought I better bring it up now because I do think that the State should be entitled to bring that to the attention of the jury in terms of any potential rehabilitation of what may be otherwise impeachable stuff.

know, it has now reared its head one of those potentials for something that could be used against one but not used against another.

The only thing that we did yesterday was we reduced the equation by one, but certainly if the court will recall, I mean we've got the same sort of situation with the other co-defendant, I believe. I believe—may be wrong about that, maybe Benson ID's are all in, but nevertheless at this point I think that a mistrial is the appropriate undertaking.

Hubbard's and Earl's attorneys both objected to the granting of a mistrial. The trial judge, however, instead fashioned his own remedy, ruling that the parties could refer to the seventh identification, that of Earl, but could not refer to the seventh identification of Earl by name.[5] The prosecutor con-

---

5. [COURT]: All right. Now, I need to know from the defense what your position is in regard to a mistrial, in either order?

&ast; &ast; &ast;

[EARL'S ATTORNEY]: Your Honor, at this point on behalf of Mr. Earl, this has been hanging for a long time. He would prefer that the court not grant a mistrial.

&ast; &ast; &ast;

[HUBBARD'S ATTORNEY]: We're not asking for a mistrial either, Your Honor. That is not to say that it may—I'm not arguing for it. That is not to say that I don't know what alternative the court has at this juncture.

&ast; &ast; &ast;

[COURT]: And I think we both know where we are in terms of jeopardy and retrial and that sort of issue. The question is am I going to grant a mistrial over the objection of the defendants or not?

&ast; &ast; &ast;

The State brings this matter to the court's attention in terms of expecting cross-examination on the issue of how many total identifications Ms. Rogers made. I believe the count is seven, six of whom were two of the defendants, Mr. Hubbard, Mr. Benson, who is no longer in this case at this time, and four others who were ruled out, and then a seventh identification which was Mr. Earl, who—which I have suppressed.

State wants to attempt to rehabilitate Ms. Ortega—excuse me, Ms. Rogers if that question is asked by I think asking her whether or not she did, in fact, identify Earl as one of these defendants.

&ast; &ast; &ast;

Well, I'm not going to permit that because that would, in fact, undo the suppression and it would undo it without Mr. Earl and/or his

tinued his objection, and insisted that manifest necessity existed for a mistrial because the alternative suggested by the judge would hinder the ability of the State to rehabilitate Ms. Rogers:

[STATE]: Your Honor, from the State's perspective, I don't see where that gets anything in terms of potential rehabilitation. In other words, again, the rehabilitation effect I think is evident by the fact that, yes, she named two of these persons who are standing trial here today. As we all know, in fact she named three of the defendants who are standing trial. So to simply say that the State can't show that she identified Mr. Earl is to say that bolsters the idea that she made seven identifications regarding three persons and, again, that only one of those is before the jury in terms of her being able to say that's the one I identified.

[COURT]: Well, let me ask you this: Do you believe that this is an example of manifest necessity for a mistrial? You understand that a retrial will be barred unless there's manifest necessity.

[STATE]: **I understand, Your Honor, and that's why, again, I brought it to the court's attention, because I think we need to have a ruling on this. I believe on the basis of the position of the defendants—and I fully understand the position of the defendants, but I believe**

---

attorney having opened that door, so I'm not going to allow it. Then [Hubbard's Attorney] argues that it's prejudicial to his client to limit his cross-examination to not permitting any reference to Mr. Earl by name. And [Earl's Attorney] argues that even reference to the seventh identification of an unnamed individual may raise a negative inference as to his client. So essentially if I don't declare a mistrial, my remedy is not going to suit anybody. Well, I guess we're going to find out whether this is a constitutional remedy or not.

My ruling is [The Prosecutor] can in redirect refer to the seventh identification, but may not refer to and may not permit the witness to refer to the name of the seventh individual or otherwise identify who that individual is as Gary Earl. And, [Hubbard's Attorney], I'm going to impose the same limitation on you. If that's an unconstitutional violation of your defendant's due process rights, then the Court of Appeals is going to let us know that, but I'm not going to declare a mistrial. I'm going to go forward with this matter with the remedy that I've just fashioned.

that on the basis of their respective positions, that it's manifest necessity because I think that otherwise it would deny the State the right to rehabilitate a witness in a manner or rehabilitation that I think can be effective.

The effectiveness of simply saying that she actually identified seven people, as I say, that doesn't rehabilitate her at all. Rehabilitation comes from saying two of those persons are seated in this courtroom and that she identified another co-defendant; therefore, either severance or mistrial. You know, if we sever the case, then I can go forward. I'm not sure.

[COURT]: Thing is this jury has now had opening statements having to do with two defendants, has been told various things about the evidence from the State, intends to proceed against two defendants. Severing one of them and continuing with the other one at this point seems like a very confusing way for the jury.

[STATE]: Seems to me—and, again, I'm not—foreclosing any argument from defense counsel, but it seems to me that it may be prejudicial to one or the other of the defendants, particularly the one who is still sitting at counsel table; therein, as I say, Your Honor, I think lies the necessity, the manifest necessity for a mistrial. I'm not saying that's the—it's a Hobson's choice, only perhaps three choices rather than the two, but the bottom line is I don't see how due process is afforded to both sides without doing just that.

\* \* \*

[COURT]: Well, [The Prosecutor] is exactly right, it's a Hobson's choice, but if I have one paramount duty that's more important than any others, it is to safeguard the rights of parties before the court, defendants and the State, actually.

Well, I agree that it's difficult to see how I can fashion a remedy, although I was in the process of arriving at a remedy, but upon further reflection, it seems to me that any remedy that I fashion has got to be prejudicial to somebody,

prejudicial to one of the defendants or to the other or maybe both of them, and/or prejudicial to the State for that matter. Clearly the issue of retrial after mistrial doesn't have anything to do with the benefit to who. I mean, it could be mistrial could have been declared and have extended a benefit to the defendant, and that's not a factor in the analysis.

Upon further consideration of [The Prosecutor]'s argument, I believe that this is a manifest necessity and I will, therefore, declare a mistrial in this matter and grant severance on my own motion of all three of these cases.

(emphasis added)

Earl and Hubbard filed separate motions to dismiss their indictments on double jeopardy grounds, which were denied after hearings, by the same judge who had declared the mistrial.

Petitioners appealed to the Court of Special Appeals, which affirmed in a reported opinion. *Hubbard v. State*, 166 Md. App. 250, 262, 887 A.2d 1120, 1127 (2005). The intermediate appellate court held that because the judge considered the possible alternatives, he had exercised his sound discretion to find manifest necessity to declare a mistrial. *Id.* at 261–62, 887 A.2d at 1126–27.

We granted Petitioners's petition for writ of certiorari, which presented the following question for our review:

Where jeopardy had attached at trial and the trial judge had granted the prosecutor's motion for a mistrial over Petitioners's objections, did the Court of Special Appeals err in affirming the trial judge's decision that the mistrial had been required by manifest necessity?

393 Md. 160, 900 A.2d 206 (2006). We hold that the Court of Special Appeals erred in affirming the trial judge's decision that the mistrial was required by manifest necessity.

## II. Discussion

Petitioners contend that the Court of Special Appeals erred in affirming the trial judge's decision that the mistrial was

required by manifest necessity. They argue that there was a five-month delay between the suppression of Ms. Rogers's out-of-court and in-court identifications of Earl and the trial date, and as a result, the State had ample time to consider the ramifications of the ruling, which Petitioners described as creating an "obvious imbalance in the identification evidence." Petitioners claim that the result of the suppression rulings was the foreseeable risk that Ms. Rogers could not be called as a witness against Hubbard because of the potential prejudicial effect on Earl, and despite this, the prosecution chose to proceed with a joint trial. Petitioners contend that this case is analogous to situations involving deficiencies in the State's evidence or the absence of a witness, which do not constitute manifest necessity to declare a mistrial.

The State, conversely, argues that the Court of Special Appeals was correct in affirming the trial judge's decision to declare the mistrial for manifest necessity because the decision was within the discretion of the judge, and the judge thoroughly considered the alternatives before declaring the mistrial. The State also contends that manifest necessity existed because the evidentiary problem would adversely affect some combination of the prosecution and one or both of the defendants, the prosecution was not at fault for the problem, and Petitioners did not offer any other alternative.

## A. Double Jeopardy

In *Benton v. Maryland*, 395 U.S. 784, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969), the United States Supreme Court held that the Double Jeopardy Clause of the Fifth Amendment, requiring that "[n]o person be subject for the same offense to be twice put in jeopardy of life or limb," was applicable to state criminal proceedings through the Fourteenth Amendment. *Id.* at 796, 89 S.Ct. at 2062, 23 L.Ed.2d at 715. The Double Jeopardy Clause prohibits cumulative punishment as well as successive prosecution. *Brown v. Ohio*, 432 U.S. 161, 165–66, 97 S.Ct. 2221, 2225, 53 L.Ed.2d 187, 194 (1977). As the Supreme Court has stated, "to subject the individual to repeated prosecutions for the same offense would cut deeply

into the framework of procedural protections which the Constitution establishes for the conduct of a criminal trial." *United States v. Jorn,* 400 U.S. 470, 479, 91 S.Ct. 547, 554, 27 L.Ed.2d 543, 553 (1971).

 The Double Jeopardy Clause unequivocally bars the retrial of a defendant after a final judgment of acquittal. *Arizona v. Washington,* 434 U.S. 497, 503, 98 S.Ct. 824, 829, 54 L.Ed.2d 717, 726–27 (1978). Retrial is not automatically barred, however, when a criminal proceeding is concluded after jeopardy attaches but without resolving the merits of the case. As Justice Stevens stated in *Arizona v. Washington:*

Unlike the situation in which the trial has ended in an acquittal or conviction, retrial is not automatically barred when a criminal proceeding is terminated without finally resolving the merits of the charges against the accused. Because of the variety of circumstances that may make it necessary to discharge a jury before a trial is concluded, and because those circumstances do not invariably create unfairness to the accused, his valued right to have the trial concluded by a particular tribunal is sometimes subordinate to the public interest in affording the prosecutor one full and fair opportunity to present his evidence to an impartial jury. Yet in view of the importance of the right, and the fact that it is frustrated by any mistrial, *the prosecutor must shoulder the burden of justifying the mistrial if he is to avoid the double jeopardy bar. His burden is a heavy one. The prosecutor must demonstrate "manifest necessity" for any mistrial declared over the objection of the defendant.*

434 U.S. at 505, 98 S.Ct. at 830, 54 L.Ed.2d at 728 (emphasis added). If granting a mistrial over objection was manifestly necessary, the defendant may be retried without implicating the Double Jeopardy Clause; if there were no manifest necessity for the mistrial determination over objection, the defendant could not be retried.[6]

---

6. When a defendant does not object to the motion for a mistrial, or a mistrial is declared at a defendant's behest, the double jeopardy equa-

■ In the present case, the jury had been empaneled and sworn, so that jeopardy had attached. *See Illinois v. Somerville*, 410 U.S. 458, 467, 93 S.Ct. 1066, 1072, 35 L.Ed.2d 425, 433 (1973) (stating that jeopardy attaches in a jury trial when the jury is empaneled and sworn); *State v. Woodson*, 338 Md. 322, 329, 658 A.2d 272, 276 (1995) (same). Both Hubbard and Earl objected to the grant of the mistrial. The sole issue, then, is whether the judge erred when he declared a mistrial based upon manifest necessity.

### B. Manifest Necessity

■ Whether manifest necessity to declare a mistrial and avoid double jeopardy exists is based upon the unique facts and circumstances of each case. *See Jorn*, 400 U.S. at 480, 91 S.Ct. at 555, 27 L.Ed.2d at 554 ("[The Supreme] Court has, for the most part, explicitly declined the invitation of litigants to formulate rules based on categories of circumstances which will permit or preclude retrial."). The concept of manifest necessity was introduced in *United States v. Perez*, 9 Wheat. 579, 22 U.S. 579, 6 L.Ed. 165 (1824), when the Supreme Court declared:

> We think, that in all cases of this nature, the law has invested Courts of justice with the authority to discharge a jury from giving any verdict, whenever, in their opinion, taking all the circumstances into consideration, there is a manifest necessity for the act, or the ends of public justice would otherwise be defeated.

*Id.* at 580, 6 L.Ed. at 165. *See also Arizona v. Washington*, 434 U.S. at 506 n. 18, 98 S.Ct. at 830 n. 18, 54 L.Ed.2d at 728 n. 18; *Somerville*, 410 U.S. at 461, 93 S.Ct. at 1069, 35 L.Ed.2d at 429; *Jorn*, 400 U.S. at 481, 91 S.Ct. at 555, 27 L.Ed.2d at 554; *Wade v. Hunter*, 336 U.S. 684, 689–90, 69 S.Ct. 834, 837, 93 L.Ed. 974, 978 (1949). In *Arizona v.*

---

tion is different. *See United States v. Dinitz*, 424 U.S. 600, 607–08, 96 S.Ct. 1075, 1079, 47 L.Ed.2d 267, 274 (1976) (stating that generally, "a motion by the defendant for mistrial is ordinarily assumed to remove any barrier to reprosecution"), quoting in turn *Jorn*, 400 U.S. at 485, 91 S.Ct. at 557, 27 L.Ed.2d at 556.

*Washington, supra,* the Supreme Court declined to categorically formulate a test for manifest necessity but instead recognized the "classic formulation" of the term, describing:

> The words "manifest necessity" appropriately characterize the magnitude of the prosecutor's burden. . . . Nevertheless, those words do not describe a standard that can be applied mechanically or without attention to the particular problem confronting the trial judge. Indeed, it is manifest that the key word "necessity" cannot be interpreted literally; instead, contrary to the teaching of Webster, we assume that there are degrees of necessity and we require a *"high degree"* before concluding that a mistrial is appropriate.

434 U.S. at 505–06, 98 S.Ct. at 830–31, 54 L.Ed.2d at 728–29 (emphasis added). To meet the "high degree" of necessity, the Supreme Court has recognized that there must be no reasonable alternative to the declaration of a mistrial. *See Somerville,* 410 U.S. at 462, 93 S.Ct. at 1069, 35 L.Ed.2d at 430 ("Where . . . the ends of substantial justice cannot be attained without discontinuing the trial, a mistrial may be declared . . . over [defendant's] objection."), quoting in turn *Gori v. United States,* 367 U.S. 364, 368, 81 S.Ct. 1523, 1526, 6 L.Ed.2d 901, 904 (1961); *Jorn,* 400 U.S. at 487, 91 S.Ct. at 558, 27 L.Ed.2d at 558 (suggesting that a trial continuance would have been a reasonable alternative to declaring a mistrial).

We have adopted the same framework for the Maryland common law double jeopardy prohibition. *See Wynn v. State,* 388 Md. 423, 429, 879 A.2d 1097, 1101 (2005) (stating the "well-established" rule that manifest necessity for any mistrial declared over the objection of the defendant is required to allow retrial); *Taylor v. State,* 381 Md. 602, 611, 851 A.2d 551, 556 (2004), quoting in turn *Woodson,* 338 Md. at 329, 658 A.2d at 276 ("Thus, after jeopardy attaches, retrial is barred if a mistrial is declared without the defendant's consent unless there is a showing of 'manifest necessity' to declare the mistrial."); *State v. Crutchfield,* 318 Md. 200, 207–08, 567 A.2d 449, 452 (1989) (quoting "seminal Supreme Court" decision, *Perez,* for the double jeopardy manifest necessity requirement); *Wooten–Bey v. State,* 308 Md. 534, 542, 520 A.2d 1090,

1094 (1987) (citing framework set forth in *Perez* ); *In re Mark R.*, 294 Md. 244, 249–50, 449 A.2d 393, 397 (1982) (quoting extensively from *Arizona v. Washington* ); *Cornish v. State,* 272 Md. 312, 317–18, 322 A.2d 880, 884 (1974) (following the principles set forth in Supreme Court case law to determine whether manifest necessity existed).

In *In re Mark R., supra,* this Court iterated that the prosecutor must shoulder a heavy burden to justify a mistrial if the prosecutor is to avoid the double jeopardy bar, embracing the maxim that the prosecutor must demonstrate that there is "a high degree of necessity before concluding that the mistrial is appropriate." 294 Md. at 249–50, 449 A.2d at 397. *See also Taylor,* 381 Md. at 611, 851 A.2d at 556, quoting in turn *Woodson,* 338 Md. at 329, 658 A.2d at 276; *Crutchfield,* 318 Md. at 208, 567 A.2d at 452; *Cornish,* 272 Md. at 317–18, 322 A.2d at 884 (stating that manifest necessity is only apparent "under urgent circumstances," or "in very extraordinary and striking circumstances"). We also confirmed that "a retrial is barred by the Fifth Amendment where reasonable alternatives to a mistrial ... are feasible and could cure the problem." *In re Mark R.,* 294 Md. at 263, 449 A.2d at 404, quoting in turn *Cornish,* 272 Md. at 320, 322 A.2d at 886. *See Crutchfield,* 318 Md. at 213, 567 A.2d at 455; *Neal v. State,* 272 Md. 323, 326, 322 A.2d 887, 889 (1974) (remarking that a mistrial should only be declared once the judge perceives that trial cannot proceed). *E.g., Jourdan v. State,* 275 Md. 495, 511, 341 A.2d 388, 398 (1975) (noting that there was no reason why a continuance was not an alternate remedy when the prosecuting attorney became ill).

Thus, to determine whether manifest necessity to declare a mistrial over defense objection exists, the trial judge must engage in the process of exploring reasonable alternatives and determine that there is no reasonable alternative to the mistrial. Unlike the rule propounded by the Court of Special Appeals, application of this standard in manifest necessity cases does not only consider whether alternatives were analyzed, but also goes to whether a reasonable alternative to

a mistrial was available. If there was no reasonable alternative, ordinarily the mistrial is manifestly necessary, and retrial is not barred by double jeopardy principles. If there is a reasonable alternative, the mistrial is not manifestly necessary, and a defendant cannot be retried. Any doubt should be resolved in favor of the defendant. *In re Mark R.*, 294 Md. at 262, 449 A.2d at 403 (citing *Downum v. United States*, 372 U.S. 734, 738, 83 S.Ct. 1033, 1035, 10 L.Ed.2d 100, 104 (1963)).

In the case *sub judice*, the decision to grant a mistrial arose because of two mutually antagonistic decisions made by the State—the first, to proceed against Hubbard and Earl jointly, and the second, to call Sabrina Rogers to the stand in the joint trial. Although the judge suppressed both Ms. Rogers's out-of-court and in-court identification of Earl, he did not suppress Ms. Rogers's out-of-court and in-court identification of Hubbard. The State would call Ms. Rogers to testify against Hubbard, and Hubbard would attempt to impeach her with her identification of six other individuals, including Earl. The identification of Earl by Ms. Rogers, however, had been suppressed.

We acknowledge that the trial court did explore other various alternatives to a mistrial. Nevertheless, his exploration is only a part of the equation, because there was a reasonable alternative to the decision to declare a mistrial against both Hubbard and Earl.

The exclusion of Sabrina Rogers's testimony against Hubbard would have remedied the situation caused by the joint prosecution. Maryland Rule 5–403 states the general principal that evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice. In *Smith v. State*, 371 Md. 496, 504–06, 810 A.2d 449, 454–55 (2002), we held that even if evidence of an alleged conspiracy between a witness, a co-defendant, and the co-defendant's attorney, was relevant to prove the witness's bias, it was inadmissible because its probative value was substantially outweighed by its obvious prejudice to the co-defendant's attorney. *See also McKnight v. State*, 280 Md. 604, 615, 375

A.2d 551, 557 (1977) ("[I]t is unrealistic to expect jurors to ignore seemingly relevant evidence which they have already heard.").

Other jurisdictions have considered the exclusion of testimony as a reasonable alternative to declaring a mistrial. In *State v. Dodge,* 564 P.2d 312 (Utah 1977), the Supreme Court of Utah considered whether the trial judge's denial of defendant's motion for a mistrial was proper. The court held that the trial judge correctly declined to grant a mistrial, stating: "The trial court had other alternatives to the mistrial the appellant requested. A motion to strike or exclude the violating witnesses testimony could have been made." *Id.* at 313 (also noting that defendants should avail themselves of "less drastic means" to limit possible prejudice before moving for a mistrial). *See also, e.g., McArthur v. State,* 671 So.2d 867, 870 (Fla.Dist.Ct.App.1996) ("[W]e find that the trial court [erred] in failing to either exclude the evidence *or* in the alternative, grant appellant's motion for a mistrial."); *People v. Pondexter,* 214 Ill.App.3d 79, 157 Ill.Dec. 921, 573 N.E.2d 339, 344 (1991) (reversing order granting a mistrial because "the trial court stated it only had two alternatives ... declare a mistrial ... or bar the testimony."); *State v. Rowe,* 480 A.2d 778, 782–83 (Me.1984) (dealing with issue of severance, the court stated that "[m]anifest necessity simply cannot exist where, as here, the trial justice had a clear alternative—sustaining [defendant's] objection to the admission of the ... statement—that would have both protected ... [co-defendant's] rights and preserved intact the joint prosecution format selected by the state."). *Cf. Bruton v. United States,* 391 U.S. 123, 137, 88 S.Ct. 1620, 1628, 20 L.Ed.2d 476, 485–86 (1968) (refusing to allow introduction of defendant's confession in joint trial because it was facially incriminating against co-defendant); *Williams v. Washington,* 59 F.3d 673, 683 (7th Cir.1995) (acknowledging that admission of co-defendant's statement implicating the other defendant results in a substantial and unfair prejudice to the other defendant).

The reluctance of the trial judge to exclude Ms. Rogers's testimony seemingly was the result of a concern about the

prejudice that the State would suffer. The State created the conundrum; it also cannot be the beneficiary of a manifest necessity analysis. The State knew five months prior to trial that there were significant problems resulting from calling Sabrina Rogers to testify against Hubbard that would prejudice Earl if the two were tried together. *See Downum,* 372 U.S. at 737, 83 S.Ct. at 1035, 10 L.Ed.2d at 103 (declaring that prosecutorial unpreparedness in not assuring witness availability is insufficient to find manifest necessity); *United States v. Figueroa,* 618 F.2d 934, 945 (2d Cir.1980) ("Evidence that might be admissible under Rule 403 in a trial of one defendant is not inevitably admissible in a joint trial. In some situations the danger of unfair prejudice to co-defendants may be so great that the prosecution must be put to a choice of forgoing either the evidence or the joint trial."); *Epps v. State,* 276 Md. 96, 117, 345 A.2d 62, 76 (1975) (referring to the State's decision to try defendants together as a "tactical decision").

At oral argument before this Court, the only explanation the State could offer for why it did not sever the cases was judicial economy, but judicial economy does not supplant the right of an accused not to be tried twice for the same crime. *See Jorn,* 400 U.S. at 485, 91 S.Ct. at 557, 27 L.Ed.2d at 556 (noting that if a defendant's right to take the case to the jury is valued, it is enough to bar retrial on double jeopardy grounds unless a mistrial was actually necessary to protect an important public interest); *United States v. Chica,* 14 F.3d 1527, 1532 (11th Cir.1994) ("We empathize with the district court's desire to conserve judicial resources by having one trial instead of two, but the Double Jeopardy Clause does not contain a judicial economy exception."); *United States v. Givens,* 88 F.3d 608, 614 (8th Cir.1996) (observing that trial courts cannot rely upon the "forbidden considerations of judicial economy" when declaring a mistrial); *United States v. Ramirez,* 884 F.2d 1524, 1530 (1st Cir.1989) (stating that the cost of two trials cannot justify declaring a mistrial instead of granting a severance); *United States v. Bridewell,* 664 F.2d 1050, 1051 (6th Cir.1981) (per curiam) ("While we sympathize with [the district court's] laudable desire to avoid a waste of federal court resources, we

do not think that the possible necessity of a separate trial constitutes manifest necessity for purposes of avoiding a double jeopardy bar.").

In the case *sub judice,* a reasonable alternative existed to the declaration of a mistrial, and thus the mistrial was not manifestly necessary. The trial judge erred by declaring a mistrial based on manifest necessity.

***JUDGMENT OF THE COURT OF SPECIAL APPEALS REVERSED. CASE REMANDED TO THAT COURT WITH DIRECTIONS TO REVERSE THE JUDGMENT OF THE CIRCUIT COURT FOR CECIL COUNTY AND RE-MAND THE CASE TO THE CIRCUIT COURT FOR CE-CIL COUNTY WITH DIRECTIONS TO DISMISS THE INDICTMENTS. COSTS IN THIS COURT AND IN THE COURT OF SPECIAL APPEALS TO BE PAID BY CECIL COUNTY.***