540 So.2d 844 (1989)
Frankie Lee McFadden, Appellant,
v.
The STATE of Florida, Appellee.
No. 87-1080.
District Court of Appeal of Florida, Third District.
January 17, 1989.
Rubin, Rubin & Fuqua and Harry M. Fuqua, Miami, for appellant.
Robert A. Butterworth, Atty. Gen., and Janet Reno, State Atty., and Anthony C. Musto, Asst. State Atty., for appellee.
Before HUBBART and FERGUSON, JJ., and JAMES C. DOWNEY, Associate Judge.
JAMES C. DOWNEY, Associate Judge.
Appellant, Franklin Lee McFadden, was charged with violating section 838.016(2), Florida Statutes (1981), which prohibits the receipt of unlawful compensation by a public official. From a conviction of said crime and an upward departure sentence of three years in prison, McFadden has perfected this appeal.
It appears that McFadden was employed by the State of Florida as a Florida Parole Examiner II. In such capacity he was assigned to investigate a convicted felon, Alberto San Pedro, with reference to San Pedro's application for clemency. Specifically, McFadden was to determine whether any law enforcement agencies were conducting *845 investigations of possible illegal activity involving San Pedro. As a result of his investigation, McFadden learned that there were ongoing investigations and that San Pedro was suspected of being involved in numerous illegal activities and of having organized crime connections. One law enforcement official even warned McFadden that, should the opportunity arise, San Pedro would likely offer McFadden money in return for favors.
McFadden prepared a memorandum directed to the Clemency Administrator of the Parole and Probation Commission advising that there was no pending investigation of San Pedro by any law enforcement agency. Furthermore, the memorandum recommended that San Pedro be pardoned. The evidence at trial showed that McFadden took the aforesaid memorandum to San Pedro and allowed him to mail it. Unbeknown to McFadden, a judicially authorized electronic room bug recorded the conversation between McFadden and San Pedro on this occasion and the tape was admitted into evidence at trial. The day following the delivery of the memorandum, the evidence shows, McFadden brought six one hundred dollar bills to his bank for deposit. Finally, the Director of the Parole and Probation Commission testified that it was inappropriate for an examiner to make a recommendation regarding clemency in any event. Prior to the original trial McFadden moved to suppress a statement he had given which included a colloquy between McFadden and detective Kost as follows:
Q. Would you be willing to take a polygraph examination on those two points?
A. Well, I guess I could. What's the polygraph? How does that affect 
Q. We had a problem in your first statement, which we corrected. I think the polygraph might bear out your integrity and also the fact right now that you are telling everything that happened.
A. I've never taken a polygraph before.
Q. It will be a new experience.
A. I don't know if I want to 
Mr. Kost. I will let you think about it. Mr. McFadden, thank you very much.
Though the foregoing statement was not mentioned by the state in opening, during McFadden's opening statement to the jury his counsel began to discuss McFadden's statement given to Kost as follows:
Then for 10 or 15 minutes, it depends upon which witness you believe, the detective or the court reporter who was there taking down what happened, for 10 or 15 minutes, the detective tells Frankie (appellant) that he's lying, that he knows that there was cash that was given by San Pedro to Frankie. He offers Frankie a polygraph test, and Frankie says, "I'll take it."
The state objected to these remarks and moved for a mistrial. McFadden resisted the mistrial motion and requested instead, the court instruct the jury to disregard the remarks. Nevertheless, the court granted the mistrial. Thereafter, McFadden moved to dismiss the cause based upon double jeopardy grounds. He contended that there was no manifest necessity to grant the mistrial because a simple instruction to disregard the remarks would have sufficed to cure the problem, such as it was. The motion to dismiss was denied and the cause proceeded to trial and conviction.
Appellant's main point on this appeal is that the trial court erred in denying his motion to dismiss because jeopardy had attached in the first trial and subjecting him to a second trial violated his constitutional right against being twice put in jeopardy.
The law in Florida is clear that the mere mention of polygraph results in a criminal case is grounds for a mistrial. Walsh v. State, 418 So.2d 1000 (Fla. 1982); Kaminiski v. State 63 So.2d 339 (Fla. 1952). This includes not only the suggestions regarding a defendant and a polygraph exam but also testimony regarding witnesses and their polygraph results which may weigh heavily in the case on the question of defendant's guilt or innocence. Simeon v. State, 520 So.2d 81 (Fla. 3d DCA 1988). However, not every reference to a polygraph exam is inadmissible, nor does every improper admission of the taking of a polygraph exam require a mistrial. For example: Johnson v. State, 166 So.2d 798 (Fla. 2d DCA 1964); Hutchins v. State, 334 So.2d 112 (Fla. 3d DCA 1976); and Wiese v. State, 357 So.2d 755 (Fla. 4th DCA 1978).
*846 The state contends for a rule across the board which would hold that any reference to offers or refusals of a polygraph exam is inadmissible and would require a mistrial. There is out of state authority for such a position as seen in State v. Anderson, 261 Minn. 431, 113 N.W.2d 4 (1962); Ferby v. Blankenship, 501 F. Supp. 89 (E.D.Va. 1980), and cases annotated in 95 A.L.R.2d 819. Indeed, some of these cases recognize that evidence of an offer or refusal to take a polygraph test may be more devastating than disclosure of the results. See: Schmunk v. State, 714 P.2d 724 (Wyo. 1986); State v. Green, 254 Iowa 1379, 121 N.W.2d 89 (1963), Mills v. People, 139 Colo. 397, 339 P.2d 998 (1959). However, the Florida cases have taken a more conservative approach to the admission of such evidence. For example, in Johnson v. State, supra, a witness who in fact was a polygraph operator was allowed to testify to statements made to him by the defendant even though the jury could guess he was a polygraph operator. The court held that the fact that the rule prohibits evidence of the results of a polygraph test or any allusion which would infer or imply the results "does not ... label the polygraph a tree whose every fruit is forbidden." Furthermore, the court said the fact the jury knew the defendant took a polygraph exam or could infer he did does not result in error when the results thereof are not known. In Hutchins v. State, supra, the court held that jury knowledge that a state witness had submitted to a polygraph exam is not necessarily prejudicial if no inference as to the result is raised. To the same effect is Wiese v. State, supra, wherein the court held no error was committed in allowing evidence that a state witness had taken a polygraph test where the results were not divulged nor could they be inferred.
Adverting to the scenario presented in this case we have the state in possession of a written statement in which appellant is asked if he would be willing to take a polygraph exam. He answers somewhat vaguely, "I guess I could. What's the polygraph: How does that affect ". After being assured the test might help demonstrate that he is telling the truth, appellant says, "I've never taken a polygraph before." and then: "I don't know if I want to ". Finally the detective says he would let appellant think about it. Bottomline, we are not even dealing with a clear offer or refusal to take the test. In any event, it appears the test was never taken and no results were mentioned nor inferred. Under these circumstances it appears to us that under the law in this state there were no legitimate grounds for mistrial. Certainly, there was no manifest, urgent or absolute necessity in the interests of justice existing here  and that is the test required for a mistrial. State v. Lewis, 54 So.2d 199 (Fla. 1951). That court there said:
"the well settled rule that jeopardy attaches when the court is legally constituted, has jurisdiction of the cause and the accused, when the charge is legally sufficient on which to predicate a verdict and judgment and when the jury is sworn, unless there arises a manifest, urgent or absolute necessity in the interest of justice that a mistrial be declared and the jury discharged.
If the jury is discharged for reasons that are legally insufficient and devoid of absolute necessity and without defendant's consent, the discharge is equivalent to an acquittal and may be pleaded in bar to further trial or subsequent indictment. The trial court must necessarily determine whether or not these elements inhere in or infect the trial before he is authorized to declare a mistrial and discharge the jury. The circumstances in each case must guide him in reaching his determination."
Id. at 201. State v. Grayson, 90 So.2d 710 (Fla. 1956). Of more recent vintage is Duest v. State, 462 So.2d 446 (Fla. 1985), wherein the Supreme Court of Florida reiterated the rule that a mistrial is appropriate only when the error committed was so prejudicial as to vitiate the entire trial. Accord: Cobb v. State, 376 So.2d 230 (Fla. 1979); Perry v. State, 146 Fla. 187, 200 So. 525 (1941). We hold in this case that even if the remarks of counsel made during opening statement had been improper or erroneous they were not so egregious as to vitiate the entire trial. At the very worst a curative instruction would have sufficed to expiate the alleged harm.
*847 Another compelling argument supporting a reversal here is that appellant had every right to assume that, since the trial court had denied his motion to suppress the statement containing the polygraph colloquy, the state would offer the statement in the same form into evidence. Thus, it was an appropriate subject for discussion with the jury during opening statement. It does not suffice for the state to contend after the mistrial and motion for dismissal that the state planned to redact the portion of the statement relating to the polygraph exam. It had not previously done so, nor had it notified anyone of its intention to do so.
In view of the foregoing, jeopardy had attached at the first trial and since the court erred in directing a mistrial for insufficient reasons, subjecting appellant to another trial would violate his constitutional rights against double jeopardy.
This ruling effectively moots appellant's second point regarding the departure from the sentencing guidelines.
Accordingly, the judgment and sentence appealed from are reversed and the cause is remanded to the trial court with directions to discharge appellant.