81 A.3d 383

Stephen SIMMONS

v.

STATE of Maryland.

No. 29, Sept. Term, 2013.

Court of Appeals of Maryland.

Dec. 18, 2013.

Allison Pierce Brasseaux, Asst. Public Defender (Paul B. DeWolfe, Public Defender of Maryland, Baltimore, MD), on brief, for petitioner.

Sarah Page Pritzlaff, Asst. Atty. Gen. (Douglas F. Gansler, Atty. Gen. of Maryland, Baltimore, MD), on brief, for respondent.

Argued before BARBERA, C.J., HARRELL, BATTAGLIA, GREENE, ADKINS, McDONALD and DALE R. CATHELL (Retired, Specially Assigned), JJ.

GREENE, J.

"In criminal prosecutions, the polygraph test is a pariah; 'polygraph' is a dirty word." *State v. Hawkins*, 326 Md. 270, 275, 604 A.2d 489, 492 (1992). In this case, we consider whether defense counsel's reference, during opening statement, to his client's willingness to take a lie detector test creates manifest necessity for a mistrial, where the trial judge gave a curative instruction to the jury immediately following the improper reference and the prosecutor did not request a mistrial for reason of that improper remark until two days further into the trial. We shall affirm the judgment of the Court of Special Appeals and hold that the trial judge did not abuse his discretion in granting a mistrial two days after the improper statement and immediate curative instruction.

## I. FACTUAL AND PROCEDURAL HISTORY

Petitioner Stephen Simmons was charged in the Circuit Court for Prince George's County with murder and other related offenses arising out of the shooting death of Christopher Wright on July 1, 2009. On that date, Petitioner was standing outside the apartment building where the victim and his roommate, Razaq Sarumi, resided. Simmons became angry after Sarumi spit out of his apartment window overlooking the building entrance where Simmons was standing. Sarumi joined Simmons outside, where the two engaged verbally. Simmons displayed a firearm, began "rubbing" it, and then went into an apartment on the first floor of the building. He shortly returned outside with the gun and fired one shot, which grazed Sarumi's leg. After he was shot, Sarumi ran toward the road and heard more shots in the building. He turned around and saw Simmons come out of the building and fire a shot from the sidewalk. Sarumi ran across the road, got in a car with some friends also present during the incident, and began driving to the hospital. None of the witnesses saw the shooting of Wright or who shot him, but he was dead when the police arrived. Simmons was arrested in connection with this incident. He was held for a nearly ten hour recorded interrogation and gave the police a taped statement. During

the interrogation, Simmons offered to take a lie detector test. No test was ever performed.

Prior to trial, Simmons moved to suppress the taped statement given to police during his interrogation, arguing that it was involuntary. After a hearing on June 11, 2010, the Circuit Court denied the motion to suppress. Trial began on August 16, 2010. Defense counsel's opening statement proceeded as follows:

[DEFENSE COUNSEL]: You will hear that when my client was arrested, he was held for ten hours in a frigid interrogation room. He was given no food. He was allowed to make no phone calls. He had no grandmother or paid lawyers rushing down to help him. He was entirely alone. And a rotation of experienced homicide detectives tried every trick in the book to try to get Stephen Simmons to admit that he had shot Christopher Wright.

They even lied to him. They told Stephen Simmons that Christopher Wright had survived and had identified him as the shooter. But even though he was shivering cold, he was exhausted and utterly alone, Stephen Simmons had one thing on his side that protected him. He was actually innocent of the death—

[PROSECUTOR]: Objection.

[DEFENSE COUNSEL]:—of Christopher Wright.

THE COURT: The objection is sustained as to innocence. The State's burden is to prove guilt beyond a reasonable doubt. That's a factual issue for you. The assertions by the attorneys are to be ignored in that regard.

You may continue, counsel.

[DEFENSE COUNSEL]: Thank you, Your Honor.

You will hear him protest his innocence through the long hours of questioning, tell the detectives over and over again the one thing that he knew to be true, "I did not shoot that man. I did not shoot that man." **Stephen Simmons offered to take a lie detector test.**

[PROSECUTOR]: Objection.

THE COURT: The objection is sustained. Let me just tell you jurors when all the evidence begins, you're going to have to consider the evidence as opposed to what counsel says, what the State says, and what the defense says. But I sustained the objection with regard to the reference to a lie detector test. That's not something you can consider. It's not something you can be permitted to consider.

(Emphasis added). The State made no further objection to defense counsel's reference to a lie detector test and did not protest the adequacy or effectiveness of the court's instruction. Between the first two days of trial, August 16 and 17, 2010, the State presented the testimony of four witnesses. On August 17, 2010, the court recessed early, around 1:00 PM, to consider the admissibility of testimony by the State's firearms expert, which was ultimately excluded.

At the beginning of proceedings on August 18, 2010, the State moved for a mistrial claiming that defense counsel's reference to the lie detector test had prejudiced the jury, such prejudice could not be overcome, and the State was deprived of a fair trial. The prosecutor acknowledged the time delay between the improper statement and the motion for mistrial, stating that he "spent all night thinking about whether to make this motion." Defense counsel objected to the motion, arguing that any prejudice arising from his "fleeting reference" to the lie detector test was cured by the court's immediate instruction, and suggested that the prosecutor's timing in requesting a mistrial was evidence of an improper motive on the part of the State, particularly where the motion for a mistrial came immediately after the court excluded the State's firearms expert.

In considering the motion for mistrial, the trial judge stated that "[t]he State made a timely objection[.]" He then "characterized the [c]ourt's response to be somewhat of a blurt, so to speak, in an effort to cure what the [c]ourt accepts as an absolute transgression as to presenting to a jury the notion that that which is inadmissible might be considered." The trial judge then granted the State's motion, stating:

An opening statement is a powerful setting when counsel has the opportunity to introduce into the minds of the jury what will and what will not be presented to them in determining the issues in the case. The [c]ourt would accept that a lot of flourish is allowed with regard to opening statements and closing arguments, but the [c]ourt believes that each counsel is charged with respecting and appreciating certain limits.

In this particular instance, we're dealing with a statement not made by a witness, not unexpectedly presented by a witness, but a statement carefully made as part of a preview of the evidence to the jury. Indeed, considering that the jury has no right to expect that Mr. Simmons would testify, and that even if he were to testify, his testimony would be, "I did not shoot anyone," the statement, in effect, constituted a substitute for the defendant's testimony.

The [c]ourt, especially upon the cross-examination quite skillful of Mr. Sarumi, is satisfied that credibility is central to the prosecution of this case. It's central to the defense of the case. The [c]ourt considers the motion to be timely. The [c]ourt believes that the prejudice to the State's ability to have a fair trial is clear, because in a case so close as this, that relies upon the credibility of witnesses, there is no way to erase the potential infection of the jurors' minds as to, well, he offered to take a lie detector test. That satisfies it for me. It may not be articulated, but that might be the determining factor.

The [c]ourt finds that as a matter of manifest necessity, a mistrial must be declared to ensure that the State is not deprived of a fair trial, and to ensure that the jurors are not permitted to allow knowledge that there was an offer of a lie detector test to cause them to find that the State was not able to meet its burden.

A mistrial is declared.

Petitioner thereafter filed a "Motion to Dismiss," arguing that retrial was prohibited under double jeopardy principles. The trial court denied the motion the same day. On appeal, the

Court of Special Appeals affirmed the judgment of the trial court, holding that the trial judge did not abuse his discretion in determining that manifest necessity existed for a mistrial and therefore double jeopardy principles do not prevent a retrial. *Simmons v. State*, 208 Md.App. 677, 694–95, 57 A.3d 541, 551 (2012). We granted *certiorari*, *Simmons v. State*, 431 Md. 219, 64 A.3d 496 (2013), to answer the following question:

Did manifest necessity exist to justify the declaration of a mistrial in a case where during defense counsel's opening statement the jury was told that Petitioner had offered to take a lie detector test, where the prosecutor's objection to that statement was sustained and an immediate curative jury instruction was given, and where the prosecutor waited to request a mistrial for two days, until after four State witnesses had testified and after the trial court had ruled that an expert witness for the State would not be allowed to testify?

We shall affirm the judgment of the Court of Special Appeals, and hold that there was no abuse of discretion by the trial judge in making a determination of manifest necessity to declare a mistrial where the trial court considered its own previously issued curative instruction and found that it was insufficient to cure the prejudice caused by defense counsel's improper remark.

## II. DISCUSSION

Petitioner argues that there existed no manifest necessity for a mistrial because the trial judge's immediate curative instruction was a reasonable alternative to the declaration of a mistrial. He contends that the instruction apparently satisfied the prosecutor, because the prosecutor did not protest the adequacy or effectiveness of the trial court's instruction or ask for further relief at the time of the statement, and did not request a mistrial until two days later. In addition, Petitioner asserts that the instruction apparently satisfied the trial judge, because the trial court could have declared a mistrial *sua sponte* in the immediate aftermath, but chose to give a curative instruction instead.

On the other hand, Respondent argues that the curative instruction is not a reasonable alternative—"the bell cannot be unrung"—and therefore the trial judge did not abuse his discretion in making a determination of manifest necessity at the time he did. As the trial court observed, Respondent continues, "defense counsel's remarks were an effort to establish the credibility of [Petitioner's] claims of innocence without even the assurance that [Petitioner] would take the stand and expose his claims to cross-examination." Thus, Respondent contends, defense counsel placed highly prejudicial, inadmissible evidence before the jury in his opening statement, which "was tantamount to improper vouching, effectively stating to the jury that the offer to take a lie detector test was proof of his client's innocence[,]" therefore, the trial court's instruction was not enough to cure the prejudice and manifest necessity existed to grant a mistrial.

### A. Standard of Review

As a threshold matter, we address the appropriate standard to guide our analysis. The parties before us disagree on this issue. Petitioner urges us to review the trial judge's finding of manifest necessity for legal correctness, meanwhile Respondent contends that we should review this case for an abuse of discretion. Petitioner relies on *State v. Fennell*, 431 Md. 500, 66 A.3d 630 (2013) for the proposition that "[a]lthough we accord great deference to the decision of a trial judge ... whether there was a manifest necessity for a mistrial implicates principles of double jeopardy. We review without deference, considering the totality of the circumstances, the legal conclusions of the trial court." 431 Md. at 513, 66 A.3d at 638 (reviewing a grant of mistrial where the trial judge concluded that the jury was unlikely to reach a unanimous decision on all counts). Despite this language, the Court in *Fennell* applied an abuse of discretion analysis, holding that "before a proper finding of manifest necessity for a mistrial could have been made, the trial judge should have inquired into the jury's status of unanimity prior to its discharge. Failure to do so

was an **abuse of discretion**[.]" 431 Md. at 526, 66 A.3d at 646 (emphasis added).

■ Moreover, our cases make clear that we apply the abuse of discretion standard of review in cases of mistrial. "It is well-settled that a decision to grant a mistrial lies within the sound discretion of the trial judge and that the trial judge's determination will not be disturbed on appeal unless there is abuse of discretion." *Carter v. State*, 366 Md. 574, 589, 785 A.2d 348, 356 (2001). "In the environment of the trial the trial court is peculiarly in a superior position to judge the effect of any of the alleged improper remarks." *Wilhelm v. State*, 272 Md. 404, 429, 326 A.2d 707, 723 (1974). "The judge is physically on the scene, able to observe matters not usually reflected in a cold record. The judge is able . . . to note the reaction of the jurors and counsel to inadmissible matters. That is to say, the judge has his finger on the pulse of the trial." *Hawkins*, 326 Md. at 278, 604 A.2d at 489.

■ Reading *Fennell* along with both United States Supreme Court precedent and our own prior case law demonstrates that although a reviewing court should not simply "rubber stamp" a trial judge's ruling of a mistrial, the trial judge is "far more 'conversant with the factors relevant to the determination' than any reviewing court can possibly be" and, therefore, we review the trial judge's grant of a mistrial for abuse of discretion. *Arizona v. Washington*, 434 U.S. 497, 514, 98 S.Ct. 824, 834, 54 L.Ed.2d 717, 733 (1978) (citing *Wade v. Hunter*, 336 U.S. 684, 687, 69 S.Ct. 834, 836, 93 L.Ed. 974, 976 (1949)); *Watters v. State*, 328 Md. 38, 50, 612 A.2d 1288, 1294 (1992), *cert. denied*, 507 U.S. 1024, 113 S.Ct. 1832, 123 L.Ed.2d 460 (1993) ("[A] trial judge is ordinarily in a uniquely superior position to gauge the potential for prejudice in a particular case, and therefore to determine whether a mistrial is appropriate or required."). That is, we look to whether the trial judge's exercise of discretion was "manifestly unreasonable, or exercised on untenable grounds, or for untenable reasons." *Stabb v. State*, 423 Md. 454, 465, 31 A.3d 922, 928 (2011) (citations and quotations omitted); *Wilson v. John*

*Crane, Inc.,* 385 Md. 185, 198, 867 A.2d 1077, 1084 (2005) ("There is an abuse of discretion where no reasonable person would take the view adopted by the trial court ... or when the court acts without reference to any guiding rules or principles .... or when the ruling is violative of fact and logic.") (citations and quotations omitted).

## B. Double Jeopardy

The Double Jeopardy Clause of the Fifth Amendment to the United States Constitution, made applicable to the states through the Fourteenth Amendment, provides that, "... nor shall any person be subject for the same offense to be twice put in jeopardy of life or limb." *See Benton v. Maryland,* 395 U.S. 784, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969). Although there is no double jeopardy clause in the Maryland Constitution, it is well established that "Maryland common law double jeopardy principles also 'protect an accused against twice being put in jeopardy for the same offense.' " *State v. Woodson,* 338 Md. 322, 328, 658 A.2d 272, 276 (1995) (quoting *Gianiny v. State,* 320 Md. 337, 342, 577 A.2d 795, 797 (1990)). In a jury trial, the Double Jeopardy Clause generally bars the retrial of a criminal defendant for the same offense once a jury has been empaneled and sworn. *See Illinois v. Somerville,* 410 U.S. 458, 467, 93 S.Ct. 1066, 1072, 35 L.Ed.2d 425, 433 (1973); *Taylor v. State,* 381 Md. 602, 610–11, 851 A.2d 551, 555 (2004). Double jeopardy principles do not *per se* bar a retrial, however, when the case is terminated prematurely. *Washington,* 434 U.S. at 505, 98 S.Ct. at 830, 54 L.Ed.2d at 728 ("[R]etrial is not automatically barred when a criminal proceeding is terminated without finally resolving the merits of the charges against the accused."). When a mistrial is granted over the objection of the defendant, double jeopardy principles will not bar a retrial if there exists "manifest necessity" for the mistrial.[1] In that situation, the prosecutor bears the

---

1. We note that the double jeopardy analysis is different in the case of a mistrial granted with the consent of the defendant or a mistrial request-

heavy burden of demonstrating manifest necessity. As the Supreme Court stated in *Arizona v. Washington:*

> Because of the variety of circumstances that may make it necessary to discharge a jury before a trial is concluded, and because those circumstances do not invariably create unfairness to the accused, his valued right to have the trial concluded by a particular tribunal is sometimes subordinate to the public interest in affording the prosecutor one full and fair opportunity to present his evidence to an impartial jury. Yet in view of the importance of the right, and the fact that it is frustrated by any mistrial, the prosecutor must shoulder the burden of justifying the mistrial if he is to avoid the double jeopardy bar. His burden is a heavy one.

434 U.S. at 505, 98 S.Ct. at 830, 54 L.Ed.2d at 728 (footnote omitted).

In the instant case, at the time the proceedings were aborted, jeopardy had already attached, the jury having been empaneled and sworn. Simmons objected to the State's request for a mistrial. Our inquiry, therefore, is whether the trial judge abused his discretion in granting the mistrial over Simmons's objection, based upon the judge's finding of manifest necessity.

### C. Manifest Necessity

The question of whether manifest necessity exists for the purposes of double jeopardy in the case of a mistrial depends on the unique facts and circumstances of the case. Indeed, the United States Supreme Court has declined to create a rigid test for determining manifest necessity. *See Blueford v. Arkansas,* —— U.S. ——, 132 S.Ct. 2044, 2052, 182 L.Ed.2d 937, 945 (2012). Instead, that determination is left to the sound discretion of the trial judge, as stated by Justice Story in *United States v. Perez,* 9 Wheat. 579, 580, 6 L.Ed. 165 (1824):

---

ed by the defendant. *See Hubbard v. State,* 395 Md. 73, 89 n. 6, 909 A.2d 270, 279 n. 6 (2006).

We think, that in all cases of this nature, the law has invested [c]ourts of justice with the authority to discharge a jury from giving any verdict, whenever, in their opinion, taking all the circumstances into consideration, there is a manifest necessity for the act, or the ends of public justice would otherwise be defeated.

More recently, in *Arizona v. Washington,* the Supreme Court expounded upon Justice Story's "classic formulation" of manifest necessity, noting that "[t]he words 'manifest necessity' appropriately characterize the magnitude of the prosecutor's burden." 434 U.S. at 505, 98 S.Ct. at 830, 54 L.Ed.2d at 728. The Supreme Court recognized that although "those words do not describe a standard that can be applied mechanically or without attention to the particular problem confronting the trial judge . . . . we assume that there are degrees of necessity and we require a 'high degree' before concluding that a mistrial is appropriate." *Washington,* 434 U.S. at 506, 98 S.Ct. at 830–31, 54 L.Ed.2d at 728–29. *See also In re Mark R.,* 294 Md. 244, 249–50, 449 A.2d 393, 397 (1982).

 To meet this "high degree" of necessity, our cases establish that "to determine whether manifest necessity to declare a mistrial over defense objection exists, the trial judge must engage in the process of exploring reasonable alternatives and determine that there is no reasonable alternative to the mistrial." *Hubbard v. State,* 395 Md. 73, 92, 909 A.2d 270, 281 (2006). In *Hubbard,* this Court held that a reasonable alternative to the declaration of a mistrial existed. Accordingly, in that case, the mistrial was not manifestly necessary. We noted that "the decision to grant a mistrial arose because of two mutually antagonistic decisions made by the State—the first, to proceed against Hubbard and [his co-defendant] Earl jointly, and the second, to call Sabrina Rogers to the stand in the joint trial." 395 Md. at 93, 909 A.2d at 281. In *Hubbard,* Sabrina Rogers's in– and out-of court identification of Earl had been suppressed prior to trial. When the State called Sabrina Rogers to testify against Hubbard, the identification of whom had not been suppressed, defense counsel objected because Hubbard's counsel would use her identification of

Earl to impeach her, thereby causing prejudice to Earl. Upon further objection by Hubbard's counsel and the prosecutor regarding the trial judge's proposed remedy, the trial judge declared a mistrial before allowing Sabrina Rogers to testify, *i.e.* before the jury had the opportunity to hear any prejudicial statements. On appeal, this Court reversed, holding that the "exclusion of Sabrina Rogers's testimony against Hubbard would have remedied the situation caused by the joint prosecution," and, therefore, exclusion of the testimony was a reasonable alternative to declaring a mistrial. *Hubbard,* 395 Md. at 93, 909 A.2d at 282.

In the present case, defense counsel knew or should have known that it was improper to mention to the jury that Simmons requested to take a polygraph exam to prove his innocence.[2] Here, unlike in *Hubbard,* the trial judge was correctly concerned about the prejudice that the State would suffer from the statement directly presented to and heard by the jury during defense counsel's opening statement. In evaluating the prejudice in obtaining a fair trial, the trial judge concluded that there was no reasonable alternative to the declaration of a mistrial.

Although certainly there are alternative actions available in the trial court's arsenal to counteract prejudice caused by an improper statement, such as curative instructions to the jury, the Supreme Court in *Arizona v. Washington* also cautioned that "[t]hose actions, however, will not necessarily remove the risk of bias that may be created by improper argument." 434 U.S. at 513, 98 S.Ct. at 834, 54 L.Ed.2d at 732–33. The Supreme Court recognized that in cases of potential prejudice

---

2. Petitioner's argument that the reference was not an "absolute transgression" because the statement would be admissible under *Johnson v. State,* 31 Md.App. 303, 355 A.2d 504 (1976), is without merit. *Johnson* is inapposite because in that case, the Court of Special Appeals held that a polygraph test may be admissible if it is used in a coercive manner to render a confession involuntary, not where the accused himself made an offer to take a lie detector test. 31 Md.App. at 308, 355 A.2d at 508 ("We do hold that if such devices are utilized, the State takes the chance that a given jury will consider the device or procedure so coercive as to declare the confession to have been involuntary.").

to the jury caused by one of the parties, "the extent of the possible bias cannot be measured," and, therefore, "[the Court] accord[s] the highest degree of respect to the trial judge's evaluation of the likelihood that the impartiality of one or more jurors may have been affected by the improper comment." *Washington,* 434 U.S. at 511, 98 S.Ct. at 833, 54 L.Ed.2d at 732.

As the Court of Special Appeals noted in this appeal below, *Arizona v. Washington* is factually analogous to the case at bar. In that case, the defendant was being tried a second time due to the prosecutor's failure to disclose exculpatory evidence during the defendant's first trial. *Washington,* 434 U.S. at 498, 98 S.Ct. at 827, 54 L.Ed.2d at 724. During defense counsel's opening statement, he made an improper comment about the "hidden evidence" in the first trial and stated that the second trial was granted because of that prosecutorial misconduct. *Washington,* 434 U.S. at 499, 98 S.Ct. at 824, 54 L.Ed.2d at 724. The prosecutor moved for a mistrial at the end of opening statements. The motion was denied at that time, and the state proceeded with its case, calling two witnesses. The next morning, the prosecutor renewed his motion for a mistrial. As noted by the Supreme Court, "[f]ortified by an evening's research, [the prosecutor] argued that there was no theory on which the basis for the new trial ruling could be brought to the attention of the jury, that the prejudice to the jury could not be repaired by any cautionary instructions, and that a mistrial was a 'manifest necessity.'" *Washington,* 434 U.S. at 500, 98 S.Ct. at 827–28, 54 L.Ed.2d at 725. The trial judge then granted the motion over the defendant's objection and argument that "any prejudice could be avoided by curative instructions." *Washington,* 434 U.S. at 501, 98 S.Ct. at 828, 54 L.Ed.2d at 725.

The Supreme Court upheld the trial court's ruling, noting that the particular situation leading to the mistrial in that case "falls in an area where the trial judge's determination is entitled to special respect." 434 U.S. at 510, 98 S.Ct. at 833, 54 L.Ed.2d at 731. The Supreme Court further observed:

An improper opening statement unquestionably tends to frustrate the public interest in having a just judgment reached by an impartial tribunal. Indeed, such statements create a ˙risk, often not present in the individual juror bias situation, that the entire panel may be tainted. The trial judge, of course, may instruct the jury to disregard the improper comment. In extreme cases, he may discipline counsel, or even remove him from the trial as he did in *United States v. Dinitz*, 424 U.S. 600 [96 S.Ct. 1075, 47 L.Ed.2d 267 (1976) ]. Those actions, however, will not necessarily remove the risk of bias that may be created by improper argument. Unless unscrupulous defense counsel are to be allowed an unfair advantage, the trial judge must have the power to declare a mistrial in appropriate cases. The interest in orderly, impartial procedure would be impaired if he were deterred from exercising that power by a concern that any time a reviewing court disagreed with his assessment of the trial situation a retrial would automatically be barred.

434 U.S. at 512–13, 98 S.Ct. at 834, 54 L.Ed.2d at 732–33 (footnote omitted). The Supreme Court also noted that although "some trial judges might have proceeded with the trial after giving the jury appropriate cautionary instructions[,]" the trial judge's evaluation of the likelihood of prejudice was given "the highest degree of respect." 434 U.S. at 511, 98 S.Ct. at 833, 54 L.Ed.2d at 732.

█ Similarly, in *Carter v. State*, this Court discussed the discretion afforded the trial judge in weighing the effectiveness of a curative instruction, holding that "when the court finds that inadmissible evidence has been presented to the jury, it is within the discretion of the trial court to decide whether a cautionary or limiting instruction should be given." 366 Md. at 588, 785 A.2d at 356. In that case, we held that the trial court abused its discretion in denying the defendant's motion for mistrial although it gave curative instructions, because the curative instruction was inadequate to cure the prejudice based on the circumstances surrounding the improper remarks. *Carter*, 366 Md. at 591, 785 A.2d at 358. More-

over, the analysis of the curative instruction in *Carter* is particularly instructive because the Court recognized that the curative instruction "highlighted the inadmissible evidence rather than curing it." *Carter*, 366 Md. at 592, 785 A.2d at 358. *See also Guesfeird v. State*, 300 Md. 653, 666, 480 A.2d 800, 807 (1984) (concluding that the prejudice to the defendant could not be effectively cured by the trial judge's timely curative instruction and noting that "rather than being curative, such an instruction might only serve to emphasize the prejudice"). Thus, we reaffirm that a trial judge must use his discretion to weigh the prejudice caused by an improper remark against the effectiveness of a curative instruction.

Whether a curative instruction is a reasonable alternative to a mistrial depends on whether the prejudice was so substantial as to deprive a party of the right to a fair trial and therefore warrant a mistrial. *See Bruton v. United States*, 391 U.S. 123, 135, 88 S.Ct. 1620, 1627, 20 L.Ed.2d 476, 485 (1968) ("[T]here are some contexts in which the risk that the jury will not, or cannot, follow instructions is so great, and the consequences of failure so vital to the defendant, that the practical and human limitations of the jury system cannot be ignored."). *See also Washington*, 434 U.S. at 516, 98 S.Ct. at 835–36, 54 L.Ed.2d at 734–35 ("Neither party has a right to have his case decided by a jury which may be tainted by bias[.]"); *Whittlesey v. State*, 326 Md. 502, 534, 606 A.2d 225, 240 (1992) ("Justice is not a one-way street. A fair trial is the entitlement of the 'People' as well as of an accused.") (citation and quotation omitted). When a party makes or introduces an improper statement at trial, "[t]he trial judge must assess the prejudicial impact of the inadmissible evidence and assess whether the prejudice can be cured. If not, a mistrial must be granted. If a curative instruction is given, the instruction must be timely, accurate, and effective." *Carter*, 366 Md. at 589, 785 A.2d at 356.

Petitioner relies on a Florida appellate court case to assert that the curative instruction would have sufficed to cure any prejudice caused by the improper remark about the polygraph

test. *McFadden v. State,* 540 So.2d 844 (Fla. 3rd DCA 1989), is factually similar to the instant case. In *McFadden,* defense counsel during his opening statement made a reference to the defendant's perceived acceptance of an offer to take a lie detector test. The prosecutor objected and then moved for a mistrial. The trial court gave a curative instruction and then granted the mistrial. The Florida appellate court held that particularly where the reference to the lie detector test did not involve any reference to the results of the test, defense counsel's remarks did not constitute legitimate grounds for mistrial, and even if they "had been improper or erroneous they were not so egregious as to vitiate the entire trial[,]" and "[a]t the very worst a curative instruction would have sufficed to expiate the alleged harm." *McFadden,* 540 So.2d at 846. Petitioner's reliance on *McFadden* is misplaced because Florida case law is inconsistent with our own established precedent. Florida cases indicate that the real concern and prejudice caused by polygraph references arise from an inference as to the result of the test. If no inference is made as to the result of the test, there is no real prejudice. *McFadden,* 540 So.2d at 846. By contrast, in Maryland, "it is universally held that evidence of the defendant's willingness or unwillingness to submit to a lie detector examination is inadmissible." *Kosmas v. State,* 316 Md. 587, 593, 560 A.2d 1137, 1140 (1989). An inference as to result is not necessary to conclude that a reference to a polygraph test caused prejudice warranting a mistrial. As we have stated, "[i]n criminal prosecutions, the polygraph test is a pariah; 'polygraph' is a dirty word." *Hawkins,* 326 Md. at 275, 604 A.2d at 492.

■ As discussed by the Court of Special Appeals in the case below, to evaluate the prejudice caused by an improper reference to a lie detector test in the face of a request for mistrial, this Court in *Guesfeird v. State,* enumerated a number of factors:

The factors that have been considered include: whether the reference to a lie detector was repeated or whether it was a single, isolated statement; whether the reference was solicited by counsel, or was an inadvertent and unresponsive

statement; whether the witness making the reference is the principal witness upon whom the entire prosecution depends; whether credibility is a crucial issue; whether a great deal of other evidence exists; and, whether an inference as to the result of the test can be drawn.

300 Md. at 659, 480 A.2d at 803. Although "[n]o single factor is determinative," *id.*, these factors "should be considered [by the trial judge] in determining whether the evidence was so prejudicial that it denied [a party] a fair trial." *Kosmas,* 316 Md. at 594, 560 A.2d at 1141. Although both *Guesfeird* and *Kosmas* involved mistrials granted due to prejudice to the defendant, these factors are equally applicable to a trial judge's evaluation of prejudice to the State in considering the effectiveness of a curative instruction versus granting a mistrial. *See Carter,* 366 Md. at 587, 785 A.2d at 355 ("A curative instruction is not always for the sole benefit of the defendant. The public has an interest in the conduct of 'fair trials designed to end in just judgments.'") (citation omitted).

In the case at bar, defense counsel made an improper reference to Petitioner's willingness to take a lie detector test during his opening statement. *See Kosmas,* 316 Md. at 593, 560 A.2d at 1140 ("[E]vidence of the defendant's willingness or unwillingness to submit to a lie detector examination is inadmissible."); *Wilhelm,* 272 Md. at 412, 326 A.2d at 714 ("[O]pening statement[s] should not include reference to facts which are plainly inadmissible. . . ."). The State objected to the statement, and the trial judge, apparently immediately aware of the possibility of bias caused by the improper reference to inadmissible evidence, issued a curative instruction *sua sponte.* Then, upon a later request by the State to revisit that potential bias and after hearing argument by both parties, the trial judge "acted responsibly and deliberately," *see Washington,* 434 U.S. at 516, 98 S.Ct. at 835, 54 L.Ed.2d at 734, and applied the relevant *Guesfeird* factors, albeit not by name, to the situation before him. Specifically, in making his finding of manifest necessity, the trial judge noted that "an opening statement is a powerful setting," and that "in this particular instance, we're dealing with a statement not . . .

unexpectedly presented by a witness, but a statement careful-
ly made as part of a preview of the evidence to the jury." The
trial judge further stated, "the statement, in effect, constituted
a substitute for the defendant's testimony . . . [and] credibility
is central to the prosecution of this case." Therefore, according
to the judge, "there is no way to erase the potential infection
of the jurors' minds as to [Petitioner's] offer[ ] to take a lie
detector test."

 Moreover, in considering the motion for mistrial, the
trial judge essentially reviewed the efficacy of his own prior
curative instruction.[3] Although "[w]hen curative instructions
are given, it is generally presumed that the jury can and will
follow them . . . . the trial judge is in the best position to
determine whether his instructions achieved the desired cura-
tive effect on the jury." *Owens—Illinois, Inc. v. Gianotti*, 148
Md.App. 457, 476, 813 A.2d 280, 291 (2002) (citations and
quotations omitted). In the present case, when the State
requested a mistrial, the trial judge considered whether the
prejudice caused by the improper statement "transcended the
curative effect of the instruction." *See Kosmas*, 316 Md. at
594, 560 A.2d at 1141. The trial judge expressly "character-
ized the [c]ourt's [curative instruction] to be somewhat of a
blurt, so to speak, in an effort to cure what the [c]ourt accepts
as an absolute transgression as to presenting to a jury the
notion that that which is inadmissible might be considered."
In concluding that "there is no way to erase the potential
infection of the jurors' minds," the trial judge determined that
the curative instruction was not enough to overcome the
prejudice caused by the reference to Simmons's offer to take a
lie detector test. Based on these findings by the trial court,

---

3. Generally, trial judges have the discretion to revisit and reverse or
modify their own previously entered interlocutory orders prior to the
entry of final judgment. *See* Black's Law Dictionary 1130 (8th ed.2004)
(defining "interlocutory order" as "[a]n order that relates to some
intermediate matter in the case; any order other than a final order");
*Quartertime Video & Vending Corp. v. Hanna*, 321 Md. 59, 66, 580 A.2d
1073, 1076 (1990) (noting that interlocutory orders are "subject to the
full discretionary revisory power of the trial court").

we conclude that the trial judge did not abuse his discretion in determining that manifest necessity existed to warrant a mistrial and that the curative instruction was insufficient to cure the prejudice caused by the reference to Petitioner's willingness to take a lie detector test. *See Kosmas,* 316 Md. at 598, 560 A.2d at 1143 ("It is akin to the placing of a nail in a board. The nail can be pulled out, but the hole made by the nail cannot be removed.") (citations and quotations omitted).

We now address Petitioner's argument that the delay between the improper remark and the State's request for a mistrial demonstrates both that there existed no manifest necessity because the trial judge could have declared a mistrial *sua sponte,* and that the delay was evidence of the prosecutor's improper motive in requesting a mistrial because the State waited until after its expert witness was excluded to make the motion. As to Petitioner's first contention, we simply note that although Petitioner is correct that a trial court may declare a mistrial *sua sponte,* there is no obligation on a trial judge to do so. *See State v. Frazier,* 79 Md.App. 118, 128, 555 A.2d 1078, 1083 (1989) (noting that "a trial judge has the inherent discretion to declare a mistrial *sua sponte* or to declare it pursuant to the State's motion").

Additionally, with regard to motive, the trial judge specifically stated when ruling on the motion that "[t]he [c]ourt does not question the motive of the State in filing a motion for a mistrial at this point in time." Moreover, the trial judge explained that the State's expert witness was "really [ ] not powerful evidence ... and the prosecution of this case within the [c]ourt's assessment ... is going to rise and fall upon whether or not the jury believes the testimony of Mr. Sarumi and/or other persons who will testify." Ultimately, the trial judge concluded that "the [c]ourt does not see the motion, [sic] any reason for the State to be trying to make a runaround the evidence that has been allowed or not allowed and to seek refuge in an opportunity to get those things in by virtue of the declaration of a mistrial." He pointed out that "[t]his is an assessment I would make if it were the defendant who was

moving for a mistrial by virtue of the State making a statement such as was made here."

In sum, the record in this case confirms that the trial judge carefully considered and ruled on the issues presented to him in what we see as, in the words of Justice Story, the "faithful, sound, and conscientious exercise of [his] discretion," *Perez,* 9 Wheat. 579, 580, 6 L.Ed. 165. It was also within the trial judge's discretion to revisit the propriety and effectiveness of his earlier curative instruction. Just as the trial judge has the discretion to make a ruling on issuing a curative instruction, he or she has the discretion to revisit that ruling and reverse or modify it, before the termination of the proceedings, upon a determination that the prejudice to the jury outweighs the curative effect of the instruction. Where that discretion has been properly exercised, this Court will not disturb such rulings on appeal.

**JUDGMENT OF THE COURT OF SPECIAL APPEALS AFFIRMED. COSTS IN THIS COURT AND THE COURT OF SPECIAL APPEALS TO BE PAID BY PETITIONER.**