Dissenting Opinion by
Barbera, C.J.,
which Adkins, J., joins
I respectfully dissent. I agree with the Majority’s determination that this Court may properly “look to the record of subsequent proceedings,” as well as the trial court’s mistrial declaration, “in order to determine whether the mistrial was supported by manifest necessity.” Majority Op. at 50, 160 A.3d at 569. I, however, part ways with the Majority’s application of the requirement that the trial judge consider reasonable alternatives prior to declaring a mistrial. The Majority’s analysis improperly placed upon the trial judge a higher burden than is mandated by the caselaw of the United States Supreme Court and this Court. Consideration of reasonable alternatives is certainly part of the manifest necessity determination. But the *63 caselaw does not require—nor should it—that a trial judge consider and reject on the record every alternative that, in hindsight, a party or a reviewing court might identify as “reasonable”; neither does such omission automatically render the declaration of a mistrial an abuse of discretion.
The Majority properly recognizes that the requirement of “manifest necessity” for a mistrial to be granted over the objection of the defendant does not demand pure necessity. See id. at 47, 160 A.3d at 568. To the contrary, the Supreme Court has expressly cautioned against such an interpretation: “[I]t is manifest that the key word ‘necessity’ cannot be interpreted literally; instead, contrary to the teaching of Webster, we assume that there are degrees of necessity and we require a ‘high degree’ before concluding that a mistrial is appropriate.” Arizona v. Washington, 434 U.S. 497, 506, 98 S.Ct. 824, 54 L.Ed.2d 717 (1978). Moreover, whether manifest necessity to declare a mistrial exists depends upon the unique facts and circumstances of each case. Hubbard v. State, 395 Md. 73, 90, 909 A.2d 270 (2006) (citing United States v. Jorn, 400 U.S. 470, 480, 91 S.Ct. 547, 27 L.Ed.2d 543 (1971)). “[T]he trial judge is far more conversant with the factors relevant to the determination than any reviewing court can possibly be and, therefore, we review the trial judge’s grant of a mistrial for abuse of discretion.” Simmons v. State, 436 Md. 202, 212, 81 A.3d 383 (2013) (internal citations and quotations omitted) (explaining that a trial judge’s mistrial determination is reviewed for abuse of discretion because “[t]he judge is physically on the scene, able to observe matters not usually reflected in a cold record.... That is to say, the judge has his finger on the pulse of the trial”) (citation omitted).
In making a manifest necessity determination, the trial judge is required to explore reasonable alternatives and determine that there is no reasonable alternative to mistrial. Illinois v. Somerville, 410 U.S. 458, 481, 93 S.Ct. 1066, 35 L.Ed.2d 425 (1973); Hubbard, 395 Md. at 92, 909 A.2d 270. The Majority concludes that, here, there was “simply not enough consideration of those [reasonable] alternatives on this record for us to conclude that a mistrial was manifestly *64 necessary.” Maj. Op. at 60, 160 A.3d at 575. In doing so, the Majority points to two alternatives to mistrial that, in the Majority’s hindsight view, were not adequately considered and thoughtfully rejected by the circuit court on the record. The Majority declares: “First, the circuit court could have ordered a brief continuance to determine whether another prosecutor was available to replace ASA Fockler,” id. at 57, 160 A.3d at 573; “[a] second alternative to mistrial suggested by Mr. Baker that was not considered by the circuit court is the exclusion of Mr. Ellis’ testimony,” id. at 59, 160 A.3d at 574.
The Majority cites Jourdan v. State, 275 Md. 495, 341 A.2d 388 (1975), among other cases, for the proposition that the trial judge could have ordered a brief continuance to determine whether another prosecutor was available to replace ASA Fockler. See Maj. Op. at 57-58, 160 A.3d at 573-74. The trial in Jourdan involved charges of storehouse breaking and forgery. 275 Md. at 496, 341 A.2d 388. The Deputy State’s Attorney became ill shortly after trial began and the trial court sua sponte declared a mistrial. Id. at 498-99, 341 A.2d 388. On appeal, this Court concluded that there was not manifest necessity for the mistrial because “the Deputy State’s Attorney had taken only ten or fifteen minutes to prepare for trial after having been assigned the cases shortly before the trial was scheduled to begin, and ... the Assistant State’s Attorney was experienced in cases of this nature.” Id. at 510, 341 A.2d 388. Alternatively, “the case could have been continued for a reasonable time until the Deputy State’s Attorney was able to resume his duties.” Id. at 511-12, 341 A.2d 388.
Unlike in Jourdan, the case before us involved a mutual shootout, giving rise to potential defenses and requiring testimony from 18 prospective witnesses. Even if we were to assume that another Assistant State’s Attorney was readily available to replace ASA Fockler, trial preparation surely would have required more than ten to fifteen minutes. In addition, the trial was on a two-day schedule set by the court during voir dire, so any delay would increase the risk of juror unavailability. In any event, it is not within the province of this Court to go so far as to mandate the on-the-record consider *65 ation of a continuance to substitute a new ASA. See Oglesby v. State, 441 Md. 673, 680, 109 A.3d 1147 (2015) (“While prosecu-torial discretion is subject to oversight by the courts to ensure that it is exercised within constitutional and statutory constraints, ‘the office of State’s Attorney is not a branch of the judiciary, nor is it directly subject to its supervision.’ ”) (citation omitted).
The Majority has suggested that the trial judge, as an alternative to mistrial, could have omitted Mr. Ellis’s testimony, relying on the proposition set forth in In re Mark R., 294 Md. 244, 262, 449 A.2d 393 (1982), that “a deficiency in the prosecution’s evidence, whether or not it should have been expected by the prosecutor and whether or not the prosecutor was at fault, ordinarily does not constitute ‘manifest necessity’ justifying an unconsented mistrial.” (emphasis added); Maj. Op. at 60, 160 A.3d at 575. That proposition was based in part upon Downum v. United States, 372 U.S. 734, 737-38, 83 S.Ct. 1033, 10 L.Ed.2d 100 (1963),[1] which the Majority asserts is “similar” to this case. Maj. Op. at 56, 160 A.3d at 573. In Dovmum, a prosecution witness “had not been served with a summons” and “no other arrangements had been made to assure his presence.” 372 U.S. at 737, 83 S.Ct. 1033. The district attorney “impaneled the jury without first ascertaining whether or not his witnesses were present.” Id. The Court determined that absence of the prosecution witness did not constitute manifest necessity for mistrial because the district attorney “took a chance” and “entered upon the trial of the case without sufficient evidence to convict.” Id. (quoting from and otherwise likening the facts in Downum to Cornero v. United States, 48 F.2d 69, 71 (9th Cir. 1931)). Notably, the Dovmum Court clarified that “we refuse to say that the absence of witnesses ‘can never justify discontinuance of a trial.’ Each case must turn on its facts.” Id. (citation omitted).
*66 More recently, in Hubbard, this Court held that the exclusion of testimony was a reasonable alternative to a mistrial where a witness was called by the State to testify against the co-defendant in a joint trial, after that same witness’s identification testimony against the other co-defendant had been suppressed. 395 Md. at 78-81, 93, 909 A.2d 270. The State knew five months prior to trial that there were significant problems with admitting such testimony. Id. at 95, 909 A.2d 270. The Court determined that the State “created the conundrum” and, therefore, could not be the “beneficiary of a manifest necessity analysis.” Id.
In contrast to Downum, the State in the present case neither “took a chance” nor allowed the jury to be impaneled without first ascertaining whether or not its witnesses were present. Moreover, unlike in Hubbard, the State did not create the conflict-of-interest conundrum in an effort to benefit from a mistrial. Rather, on the morning of trial, to ASA Fockler’s knowledge, Mr. Ellis had every intention of appearing and testifying without issue. Although Mr. Ellis eventually indicated upon arrival that he intended to invoke his Fifth Amendment privilege against self-incrimination, at the outset of the proceedings, the offer of immunity to Mr. Ellis remained a valid option for securing the testimony.[2]
The sibling relationship that formed the basis of the trial court’s conundrum—the potential conflict of interest stemming from the offer of immunity to Mr. Ellis—was not discovered until that afternoon, after the jury was sworn. Because the *67 conflict of interest stemmed from that sibling relationship, the trial judge properly focused on potential mistrial alternatives related to that relationship, rather than removing Mr. Ellis’s testimony altogether. The trial court did not abuse its discretion, under the circumstances in this case, in declining to articulate and fully consider on the record the two alternatives suggested by the Majority.
In short, although consideration of reasonable alternatives is part of the manifest necessity determination, a trial judge’s failure to exhaust and dictate on the record all of those alternatives, and its reasons for rejecting each alternative, should not render the declaration of a mistrial an abuse of discretion. Neither this Court, nor the Supreme Court, has ever required such express findings on the record. See Blueford v. Arkansas, 566 U.S. 599, 132 S.Ct. 2044, 2052, 182 L.Ed.2d 937 (2012) (stating, in the context of a hung jury, that, “[w]e have never required a trial court, before declaring a mistrial ... to consider any particular means of breaking the impasse”); see also Washington, 434 U.S. at 517, 98 S.Ct. 824 (“The state trial judge’s mistrial declaration is not subject to collateral attack ... simply because he failed to find ‘manifest necessity’ ... or to articulate on the record all the factors which informed the deliberate exercise of his discretion.”) (emphasis added). To increase the burden placed on our trial judges, in the midst of a trial and without the benefit of hindsight on appellate review, would “render[ ] the trial judge a useless appendage in the judgmental process of determining whether a mistrial was manifestly necessary in the interest of public justice.” State v. Crutchfield, 318 Md. 200, 214, 567 A.2d 449 (1989).
The trial judge noted at the hearing on Mr. Baker’s motion to dismiss that it had considered alternatives to a mistrial, including finding another attorney for Mr. Ellis, but rejected those alternatives as inappropriate under the circumstances. I cannot say in this case that the trial judge’s exercise of discretion was “manifestly unreasonable, or exercised on untenable grounds, or for untenable reasons.” Simmons, 436 Md. at 212, 81 A.3d 383 (citation omitted). Rather, I am of the *68 opinion that, “[i]n evaluating the manifest need for the mistrial, [the trial judge] proceeded with ‘the greatest caution, under urgent circumstances, and for very plain and obvious causes.’ ” Crutchfield, 318 Md. at 215, 567 A.2d 449 (quoting United States v. Perez, 22 U.S. (9 Wheat.) 579, 580, 6 L.Ed. 165 (1824)). Accordingly, I would reverse the judgment of the Court of Special Appeals.
Judge Adkins has authorized me to state that she joins this dissent.

. The Majority correctly quotes In re Mark R. A careful read of Dow-num, however, indicates that the Mark Court, in citing that case, seems to have overstated the reasoning and holding of Downum itself.

. “[T]he Supreme Court of the United States has recognized that the power of the State to compel a witness to testify is at the core of the proper functioning of our criminal justice system.” State v. Rice, 447 Md. 594, 604, 136 A.3d 720 (2016) (citing Kastigar v. United States, 406 U.S. 441, 443-44, 92 S.Ct. 1653, 32 L.Ed.2d 212 (1972)). Indeed, immunity statutes "balance the witness’s privilege against compelled self-incrimination with the legitimate power of government to compel persons to testify” and "have been referred to 'as part of our constitutional fabric.’ " Id. at 604-05, 136 A.3d 720 (citation omitted). The State retains sole discretion to determine whether the compelled testimony may be necessary to the public interest, while the trial court plays a "largely ministerial role” in considering that determination. Id. at 626, 629, 136 A.3d 720.